IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RELIANCE STANDARD LIFE      :
INSURANCE COMPANY        :
                           :
        Plaintiff        :     CIVIL ACTION
                           :
        v.         :     NO.:
JERMEASE ROSS and        :
TERESA GONZALEZ         :
                           :
        Defendants    :

## INTERPLEADER COMPLAINT

Reliance Standard Life Insurance Company ("Reliance Standard") by and through its undersigned counsel, hereby files this Interpleader Complaint and avers as follows:

### JURISDICTION

1.     This Court has jurisdiction over this Interpleader Complaint pursuant to 28 U.S.C. §1331 and 29 U.S.C. §1132(e) because the controversy involves a federal question regarding a group term life insurance policy and group accident policy that are part of an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1001, *et seq.*

### VENUE

2.     Venue is appropriate in this district pursuant to 28 U.S.C. §1391 because one or more of the defendants resides in this district and because a substantial part of the events giving rise to this claim occurred within this district.

**PARTIES**

3.     Reliance Standard is an insurance company existing under the laws of the State of Illinois and is authorized to do business in the State of Delaware with its home office in Chicago, Illinois and its administrative office at 2001 Market Street, Suite 1500, Philadelphia, PA.

4.     Jermease Ross is an individual and is believed to be a resident of the State of Delaware.  His last known address is SBI# 00354048, Howard R. Young Correctional Inst., P.O. Box 9279, Wilmington, DE 19809.

5.     Teresa Gonzalez is an individual and is believed to be a resident of the State of Colorado.  Her last known address is 8196 S. Clarkson Court, Centennial, CO 80122.

**FACTUAL ALLEGATIONS**

6.     Decedent Elizabeth Ware was stabbed to death on March 2, 2007.  See Certificate of Death, a true and correct copy of which is attached as Exhibit "A."[1]

7.     At the time of her death, decedent was a participant in a group term life insurance plan, insured by Reliance Standard policy number GL 140621 (the "Life Policy") and a group accident policy insured by Reliance Standard policy number VAR 203605 (the "Accident Policy") which were sponsored by her employer as part of its employee welfare benefit plan.  See Life Policy and Accident Policy, a true and correct copy of which are attached as Exhibits "B" and "C."

---

[1] All exhibits have been partially redacted to omit sensitive information such as home addresses and telephone numbers, social security numbers and dates of birth.

8.      As a result of decedent's death, benefits totaling $84,000 became payable. See Proof of Loss Claim Statement, a true and correct copy of which is attached as Exhibit "D."

9.      Decedent named her fiancé, Jermease Ross, as a 25% beneficiary to her Life Policy and Accident Policy.  See Designation of Change of Beneficiary Form, dated May 6, 2006, a true and correct copy of which is attached as Exhibit "E."

10.     Jermease Ross has been charged with decedent's murder.  See May 3, 2007 "Delaware Online" News Article, a true and correct copy of which is attached as Exhibit "F."

11.     Jermease Ross has asserted a claim for benefits due under the policies. See Jermease Ross claim statement, a true and correct copy of which is attached as Exhibit "G."

12.     Reliance Standard received a competing claim for Mr. Ross's benefits under the policies from decedent's three minor children.  See claim statements, true and correct copies of which are attached as Exhibit "H."

13.     Theresa Gonzalez is legal guardian of the property of decedent's three minor children.  See Order Appointing Guardian, a true and correct copy of which is attached as Exhibit "I."

14.     As of the date of this Complaint, Jermease Ross and Teresa Gonzalez maintain competing claims to benefits in the amount of $21,000, which reflects 25% of the $84,000, and which remains due under the policies.

## COUNT I-INTERPLEADER

15.    Reliance Standard incorporates paragraphs 1 through 14 of this Interpleader Complaint as is the same were set forth herein at length.

16.    The claim of Jermease Ross competes with that of Teresa Gonzalez.

17.    Reliance Standard is unable to determine the proper beneficiary under the policies and is at risk of multiple liability due to defendants' competing claims.

18.    Reliance Standard claims no interest in the benefits due, with the exception of reasonable attorney fees and costs incurred in relation to this Interpleader Complaint.

19.    Reliance Standard is an innocent entity and has in no way colluded with any of the claimants.

20.    As a result of the continuing and conflicting claims, this Interpleader is necessary to ensure that remaining benefits totaling $21,000 are paid to the proper person.

WHEREFORE, Reliance Standard Life Insurance Company respectfully requests that this Court enter an Order:

(a) directing Reliance Standard to deposit benefits due under the Life Policy and Accident Policy, totaling $21,000, together with any applicable interest into the registry of this Court, until the issue of entitlement to benefits is adjudicated;

(b) discharging Reliance standard from any and all liability related to the benefits due under the Life Policy and Accident Policy, expect to those persons to whom this Court shall adjudge entitled to the remaining benefits;

(c) enjoining any parties, named or unnamed, from initiating any action against Reliance Standard regarding any benefits due under the Life Policy and Accident Policy; and

(d) awarding to Reliance Standard its fees and costs together with any other relief this Court deems fair and just.

RAWLE & HENDERSON, LLP

By: _George T Lees II_

George T. Lees, III, Esquire (I.D. # 3647)
glees@rawle.com
300 Delaware Avenue – Suite 1015
P.O. Box 0588
Wilmington, DE 19899-0588
(302) 778-1200
Attorneys for Plaintiff,
Reliance Life Insurance Company

**Of Counsel**
Joshua Bachrach, Esquire
RAWLE & HENDERSON, LLP
40 Lake Center Executive Park
Suite 200, 401 Route 73
Marlton, NJ 08053
(856) 797-8915

**EXHIBIT A**

**OFFICE OF VITAL STATISTICS**

**CERTIFICATE OF DEATH**

*State of Delaware* (107)

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES**

State File Number

| 1. DECEDENT'S LEGAL NAME (Include AKA's if any) (First, Middle, Last) | 2. SEX | 3. SOCIAL SECURITY NUMBER |
|---|---|---|
| ELIZABETH WARE | FEMALE | |

| 4a. AGE—Last Birthday (Years) | 4b. UNDER 1 YEAR | 4c. UNDER 1 DAY | 5. DATE OF BIRTH (Mo/Day/Yr) | 6. BIRTHPLACE (City and State or Foreign Country) |
|---|---|---|---|---|
| 31 | Months Days | Hours Minutes | | Tulsa, OK |

| 7a. RESIDENCE-STATE | 7b. COUNTY | 7c. CITY OR TOWN | |
|---|---|---|---|
| Delaware | New Castle | Newark | |

| 7d. STREET AND NUMBER | 7e. APT. NO | 7f. ZIP CODE | 7g. INSIDE CITY LIMITS? ☐ Yes ☒ No |
|---|---|---|---|
| | | 19711 | |

| 8. EVER IN US ARMED FORCES? ☐ Yes ☒ No | 9. MARITAL STATUS AT TIME OF DEATH ☐ Married ☐ Widowed ☐ Divorced ☒ Never Married ☐ Unknown | 10. SURVIVING SPOUSE'S NAME (If wife, give name prior to first marriage) |
|---|---|---|

| 11. FATHER'S NAME (First, Middle, Last) | 12. MOTHER'S NAME PRIOR TO FIRST MARRIAGE (First, Middle, Last) |
|---|---|

| 13a. INFORMANT'S NAME | 13b. RELATIONSHIP TO DECEDENT | 13c. MAILING ADDRESS (Street and Number, City, State, Zip Code) |
|---|---|---|
| Teresa Gonzalez | Sister | 8196 S. Clarkson Court Centennial, CO 80122 |

**14. PLACE OF DEATH (Check only one; see instructions)**

IF DEATH OCCURRED IN A HOSPITAL: ☐ Inpatient ☐ Emergency Room/Outpatient ☐ Dead on Arrival

IF DEATH OCCURRED SOMEWHERE OTHER THAN A HOSPITAL: ☐ Hospice facility ☐ Nursing home/Long term care facility ☐ Decedent's home ☒ Other (Specify)

| 15. FACILITY NAME (If not institution, give street & number) | 16. CITY OR TOWN, STATE, AND ZIP CODE | 17. COUNTY OF DEATH |
|---|---|---|
| RT. 273 E/B EAST OF MARROWS RD | NEWARK, DE | N.C. |

| 18. METHOD OF DISPOSITION ☐ Donation ☐ Entombment ☒ Burial ☐ Cremation ☐ Removal from State ☐ Other (Specify) | 19. PLACE OF DISPOSITION (Name of cemetery, crematory, other place) Olinger Chapel Hill Cemetery |
|---|---|

| 20. LOCATION-CITY, TOWN, AND STATE | 21. NAME AND COMPLETE ADDRESS OF FUNERAL FACILITY |
|---|---|
| Littleton, CO | Strano & Feeley Family Funeral Home 635 Churchmans Road, Newark, DE 19702 |

| 22. SIGNATURE OF FUNERAL SERVICE LICENSEE OR OTHER AGENT | 23. LICENSE NUMBER (Of Licensee) |
|---|---|
| | K10000444 |

ITEMS 24-28 MUST BE COMPLETED BY PERSON WHO PRONOUNCES OR CERTIFIES DEATH

| 24. DATE PRONOUNCED DEAD (Mo/Day/Yr) | 25. TIME PRONOUNCED DEAD |
|---|---|
| MAY 2, 2007 | 7:39 AM |

| 26. SIGNATURE OF PERSON PRONOUNCING DEATH (Only when applicable) | 27. LICENSE NUMBER | 28. DATE SIGNED (Mo/Day/Yr) |
|---|---|---|

| 29. ACTUAL OR PRESUMED DATE OF DEATH (Mo/Day/Yr) (Spell Month) | 30. ACTUAL OR PRESUMED TIME OF DEATH | 31. WAS MEDICAL EXAMINER CONTACTED? ☒ Yes ☐ No |
|---|---|---|

**CAUSE OF DEATH (See instructions and examples)**

32. PART I. Enter the chain of events—diseases, injuries, or complications—that directly caused the death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE. Enter only one cause on a line. Add additional lines if necessary.

Approximate Interval: Onset to death

IMMEDIATE CAUSE (Final disease or condition resulting in death) → a. MULTIPLE STAB WOUNDS

Due to (or as a consequence of):

Sequentially list conditions, if any, leading to the cause listed on line a. Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST

b. _____ Due to (or as a consequence of):

c. _____ Due to (or as a consequence of):

d. _____

PART II. Enter other significant conditions contributing to death but not resulting in the underlying cause given in PART I

| 33. WAS AN AUTOPSY PERFORMED? ☒ Yes ☐ No ☐ Unknown |
|---|
| 34. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH? ☒ Yes ☐ No ☐ Unknown |

| 35. DID TOBACCO USE CONTRIBUTE TO DEATH? ☐ Yes ☐ Probably ☐ No ☐ Unknown | 36. IF FEMALE: ☐ Not pregnant within past year ☐ Pregnant at time of death ☐ Not pregnant, but pregnant within 42 days of death ☐ Not pregnant, but pregnant 43 days to 1 year before death ☐ Unknown if pregnant within the past year | 37. MANNER OF DEATH ☐ Natural ☒ Homicide ☐ Accident ☐ Pending Investigation ☐ Suicide ☐ Could not be determined |
|---|---|---|

| 38. DATE OF INJURY (Mo/Day/Yr) (Spell Month) | 39. TIME OF INJURY | 40. PLACE OF INJURY (e.g., Decedent's home, construction site, restaurant, wooded area) | 41. INJURY AT WORK? ☒ Yes ☐ No |
|---|---|---|---|
| 5/2/2007 | FOUND 7:10 AM UNKNOWN | ROADWAY. | |

| 42. LOCATION OF INJURY. State: DELAWARE | City or Town: NEWARK |
|---|---|

| Street & Number: RT. 273 E/B EAST OF MARROWS RD. | Apartment No.: | Zip Code: |
|---|---|---|

| 43. DESCRIBE HOW INJURY OCCURRED: WAS ASSAULTED. | 44. IF TRANSPORTATION INJURY, SPECIFY: ☐ Driver/Operator ☐ Passenger ☐ Pedestrian ☐ Other (Specify) |
|---|---|

45. CERTIFIER (Check only one):

☐ Certifying physician-To the best of my knowledge, death occurred due to the cause(s) and manner stated.

☐ Pronouncing & Certifying physician-To the best of my knowledge, death occurred at the time, date, and place, and due to the cause(s) and manner stated.

☒ Medical Examiner-On the basis of examination, and/or investigation, in my opinion, death occurred at the time, date, and place, and due to the cause(s) and manner stated.

Signature of certifier:

| 46. NAME, ADDRESS, and ZIP CODE OF PERSON COMPLETING CAUSE OF DEATH (Item 32) |
|---|
| JENNIE VERSHVOVSKY, M.D., 200 SOUTH ADAMS STREET, WILMINGTON, DE 19801 |

| 47. TITLE OF CERTIFIER | 48. LICENSE NUMBER | 49. DATE CERTIFIED (Mo/Day/Yr) | 50. FOR REGISTRAR ONLY -DATE FILED (Mo/Day/Yr) |
|---|---|---|---|
| ASSISTANT | C10007039 | MAY 3, 2007 | MAY 0 8 2007 |

| 51. DECEDENT'S EDUCATION-Check the box that best describes the highest degree or level | 52. DECEDENT OF HISPANIC ORIGIN? Check the box that best describes whether the decedent is | 53. DECEDENT'S RACE (Check one or more races to indicate what the decedent considered himself or herself to be) |
|---|---|---|

L596430

This is to certify that this is a true and correct reproduction or abstract of the official record filed with the Delaware Division of Public Health.

Any alteration of this document is prohibited. Do not accept unless on security paper with the raised seal of the Office of Vital Statistics.

State Registrar

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

**EXHIBIT B**

# RELIANCE STANDARD

## Life Insurance Company

Home Office: Chicago, Illinois • Administrative Office: Philadelphia, Pennsylvania

**POLICYHOLDER:**  Christina School District

**POLICY NUMBER:**  GL 140621

**EFFECTIVE DATE:** July 1, 2006

**ANNIVERSARY DATES:** July 1, 2007 and each July 1st thereafter.

**PREMIUM DUE DATES:** The first premium is due on the Effective Date. Further premiums are due monthly, in advance, on the first day of each month.

The Policy is delivered in Delaware and is governed by its laws.

We agree to provide insurance to you in exchange for the payment of premium and a signed Application. The Policy provides benefits for loss of life from injury or sickness. It insures the eligible persons for the amount of insurance shown on the Schedule of Benefits. The insurance is subject to the terms and conditions of the Policy.

The effective date of the Policy is shown above. Insurance starts and ends at 12:01 A.M., Local Time, at your main address. It stays in effect as long as premium is paid when due. The "TERMINATION OF THE POLICY" section of the GENERAL PROVISIONS explains when the insurance can be ended.

The Policy is signed by the President and Secretary.

_Secretary_                    _President_

Countersigned_____

Licensed Resident Agent

### GROUP LIFE INSURANCE
### NON-PARTICIPATING

This Group Life Policy amends the Group Life Policy previously issued to you by us. It is issued on November 3, 2006.

LRS-6422 Ed. 2/84

**RELIANCE STANDARD LIFE INSURANCE COMPANY**
Philadelphia, Pennsylvania

**GROUP POLICY NUMBER:** GL 140621

**POLICY EFFECTIVE DATE:** July 1, 2006

**POLICY DELIVERED IN**: Delaware

**ANNIVERSARY DATE:** July 1st in each year

Application is made to us by: Christina School District

This Application is completed in duplicate, one copy to be attached to your Policy and the other returned to us.

It is agreed that this Application takes the place of any previous application for your Policy.

Signed at _____ this _____ day of _____

Policyholder: _____    Agent: _____

By: _____    _____
              (Signature)    (Licensed Resident Agent)

_____
           (Title)

Please sign and return.

LRS-6422-A Ed. 3/82



*BC1COAPGL    14062111/01/2006*RSL
*BC2COAPChristina School District

**RELIANCE STANDARD LIFE INSURANCE COMPANY**
Philadelphia, Pennsylvania

**GROUP POLICY NUMBER:** GL 140621

**POLICY EFFECTIVE DATE:** July 1, 2006

**POLICY DELIVERED IN**: Delaware

**ANNIVERSARY DATE:** July 1st in each year

Application is made to us by: Christina School District

This Application is completed in duplicate, one copy to be attached to your Policy and the other returned to us.

It is agreed that this Application takes the place of any previous application for your Policy.

Signed at _____ this _____ day of _____

Policyholder: _____     Agent: _____

By: _____     _____
              (Signature)                                         (Licensed Resident Agent)

_____
              (Title)

LRS-6422-A Ed. 3/82

## TABLE OF CONTENTS

|  | Page |
|---|---|
| SCHEDULE OF BENEFITS | 1.0 |
| DEFINITIONS | 2.0 |
| GENERAL PROVISIONS | 3.0 |
|     Entire Contract | |
|     Changes | |
|     Incontestability | |
|     Records Maintained | |
|     Clerical Error | |
|     Misstatement of Age | |
|     Assignment | |
|     Conformity With State Laws | |
|     Certificate of Insurance | |
|     Policy Termination | |
| INDIVIDUAL ELIGIBILITY, EFFECTIVE DATE AND TERMINATION | 4.0 |
|     General Group | |
|     Eligible Classes | |
|     Effective Date of Individual Insurance | |
|     Termination of Individual Insurance | |
|     Continuation of Individual Insurance | |
|     Individual Reinstatement | |
| CONVERSION PRIVILEGE | 5.0 |
| PREMIUMS | 6.0 |
|     Premium Payment | |
|     Premium Rate | |
|     Grace Period | |
| BENEFICIARY AND FACILITY OF PAYMENT | 7.0 |
| SETTLEMENT OPTIONS | 8.0 |
| WAIVER OF PREMIUM IN EVENT OF TOTAL DISABILITY | 9.0 |
| CLAIMS PROVISIONS | 10.0 |
| FAMILY AND MEDICAL LEAVE OF ABSENCE EXTENSION | 11.0 |
| MILITARY SERVICES LEAVE OF ABSENCE COVERAGE | 11.1 |
| PORTABILITY | 12.0 |
| GROUP TERM LIFE INSURANCE LIVING BENEFIT RIDER | 13.0 |

LRS-6422-1 Ed. 3/82

LRS-6422-1 Ed. 3/82

## SCHEDULE OF BENEFITS

**NAME OF SUBSIDIARIES, DIVISIONS OR AFFILIATES TO BE COVERED:** None

**ELIGIBLE CLASSES:** Each active, Full-time Employee, except any person employed on a temporary or seasonal basis.

**INDIVIDUAL EFFECTIVE DATE:** The day the person becomes eligible.

**INDIVIDUAL REINSTATEMENT:** 6 months

**MINIMUM PARTICIPATION REQUIREMENTS:** Percentage: 100%          Number of Insureds:  10

**AMOUNT OF INSURANCE:**

**Basic Life:**  Two (2) times Earnings, rounded to the next higher $500, subject to a minimum of $5,000 and a maximum of $350,000.

The Amount of Basic Life Insurance will be reduced as follows:

(1) At age 65, to one (1) times Earnings, rounded to the next higher $500, subject to a minimum of $5,000 and a maximum of $350,000;
(2) At age 70, to one-half (1/2) times Earnings, rounded to the next higher $500, subject to a minimum of $5,000 and a maximum of $350,000; and
(3) At age 75, to $5,000.

The Life amount will be reduced by any benefit paid under the Living Benefit Rider.

**CHANGES IN AMOUNT OF INSURANCE:**  Changes in the Amount of Insurance because of changes in age, class or earnings (if applicable) are effective on the date of the change, provided the Insured must be Actively At Work on the date of the change.  If an Insured is not Actively At Work when the change should take effect, the change will take effect on the day after the Insured has been Actively At Work for one full day.

**CONTRIBUTIONS:** Persons:   Basic Insurance:  0%

## DEFINITIONS

"We," "us" and "our" means Reliance Standard Life Insurance Company.

"You," "your" and "yours" means the employer, union or other entity to which the Policy is issued and which is deemed the Policyholder.

"Eligible Person" means a person who meets the eligibility requirements of the Policy.

"Insured" means a person who meets the eligibility requirements of the Policy and is enrolled for this insurance.

"Actively at work" and "active work" means the person actually performing on a Full-time basis each and every duty pertaining to his/her job in the place where and the manner in which the job is normally performed. This includes approved time off such as vacation, jury duty and funeral leave, but does not include time off as a result of injury or illness.

"Full-time" means working for you for a minimum of 10 hours during a person's regularly scheduled work week.

"The date he/she retires" or "retirement" means the effective date of an Insured's:

    (1) retirement pension benefits under any plan of a federal, state, county or municipal retirement system, if such pension benefits include any credit for employment with you;
    (2) retirement pension benefits under any plan which you sponsor, or make or have made contributions; or
    (3) retirement benefits under the United States Social Security Act of 1935, as amended, or under any similar plan or act.

"Earnings", as used in the SCHEDULE OF BENEFITS section, means the Insured's annual salary received from you on the day just before the date of loss, prior to any deductions to a 401(k) or Section 125 plan. Earnings does not include commissions, overtime pay, bonuses or any other special compensation not received as basic salary.

If hourly employees are insured, the number of hours worked during a regularly scheduled work week, not to exceed 40 hours per week, times 52 weeks, will be used to determine annual earnings.

"Total Disability", as used in the WAIVER OF PREMIUM IN EVENT OF TOTAL DISABILITY section, means an Insured's complete inability to engage in any type of work for wage or profit for which he/she is suited by education, training or experience.

## GENERAL PROVISIONS

### ENTIRE CONTRACT

The entire contract between you and us is the Policy, your application (a copy of which is attached at issue), and any endorsements and amendments.

### CHANGES

No agent has authority to change or waive any part of the Policy. To be valid, any change or waiver must be in writing. It must also be signed by one of our executive officers and attached to the Policy.

### INCONTESTABILITY

Any statement made in your application will be deemed a representation, not a warranty. We cannot contest this Policy after it has been in force for two (2) years from the date of issue, except for non-payment of premium.

Any statements made by you, any Insured, or on behalf of any Insured to persuade us to provide coverage, will be deemed a representation, not a warranty. This provision limits our use of these statements in contesting the amount of insurance for which an Insured is covered. The following rules apply to each statement:

   (1) No statement will be used in a contest unless:

      (a) it is in a written form signed by the Insured, or on behalf of the Insured; and

      (b) a copy of such written instrument is or has been furnished to the Insured, the Insured's beneficiary or legal representative.

   (2) If the statement relates to an Insured's insurability, it will not be used to contest the validity of insurance which has been in force, before the contest, for at least two years during the lifetime of the Insured.

### RECORDS MAINTAINED

You must maintain records of all Insureds. Such records must show the essential data of the insurance, including new persons, terminations, changes, etc. This information must be reported to us regularly. We reserve the right to examine the insurance records maintained at the place where they are kept. This review will only take place during normal business hours.

### CLERICAL ERROR

Clerical errors in connection with the Policy or delays in keeping records for the Policy, whether by you, us, or the Plan Administrator:

   (1) will not terminate insurance that would otherwise have been effective; and

   (2) will not continue insurance that would otherwise have ceased or should not have been in effect.

If appropriate, a fair adjustment of premium will be made to correct a clerical error.

### MISSTATEMENT OF AGE

If an Insured's age is misstated, the premium will be adjusted. If the Insured's insurance is affected by the misstated age, it will also be adjusted. The insurance will be changed to the amount the Insured is entitled to at his/her correct age.

### ASSIGNMENT

Ownership of any benefit provided under the Policy may be transferred by assignment. An irrevocable beneficiary must give written consent to assign this insurance. Written request for assignment must be made in duplicate at our Administrative Offices. Once recorded by us, an assignment will take effect on the date it was signed. We are not liable

for any action we take before the assignment is recorded.

## CONFORMITY WITH STATE LAWS

Any section of the Policy, which on its effective date, conflicts with the laws of the state in which the Policy is issued, is amended by this provision. The Policy is amended to meet the minimum requirements of those laws.

## CERTIFICATE OF INSURANCE

We will send to you an individual certificate for each Insured.  The certificate will outline the insurance coverage and to whom benefits are payable.

## POLICY TERMINATION

You may cancel the Policy at any time. The Policy will be cancelled on the date we receive your letter or, if later, the date requested in your letter.

We may cancel the Policy if:

(1)  the premium is not paid at the end of the grace period; or

(2)  the number of Insureds is less than the Minimum Participation Number on the Schedule of Benefits; or

(3)  the percentage of eligible persons insured is less than the Minimum Participation Percentage on the Schedule of Benefits.

If we cancel because of (1) above, the Policy will be cancelled at the end of the grace period.  If we cancel because of (2) or (3) above, we will give you thirty-one (31) days written notice prior to the date of cancellation.

You will still owe us any premium that is not paid up to the date the Policy is cancelled.  We will return, pro-rata, any part of the premium paid beyond the date the Policy is cancelled.

## INDIVIDUAL ELIGIBILITY, EFFECTIVE DATE AND TERMINATION

**GENERAL GROUP:** The general group will be your employees and employees of any subsidiaries, divisions or affiliates named on the Schedule of Benefits.

**ELIGIBLE CLASSES:** The eligible classes will be those persons described on the Schedule of Benefits.

**EFFECTIVE DATE OF INDIVIDUAL INSURANCE:** If you pay the entire premium, the insurance for an eligible Person will go into effect on the date stated on the Schedule of Benefits. If an eligible Person pays a part of the premium, he/she must apply in writing for the insurance to go into effect. He/she will become insured on the date stated on the Schedule of Benefits, except that the insurance will go into effect:

    (1) on the date he/she applies, if he/she applies within thirty-one (31) days of the date he/she is first eligible; or

    (2) on the date we approve any required proof of good health. We require proof of good health if a person applies:

        (a) after thirty-one (31) days from the date he/she first becomes eligible; or

        (b) after he/she terminated this insurance but he/she remained in a class eligible for this insurance.

Changes in an Insured's amount of insurance are effective as shown on the Schedule of Benefits.

If the person is not actively at work on the day his/her insurance is to go into effect, the insurance will go into effect on the day he/she returns to active work for one full day.

**TERMINATION OF INDIVIDUAL INSURANCE:** The insurance of an Insured will terminate on the first of the following to occur:

    (1) the date the Policy terminates; or

    (2) the date the Insured ceases to be in a class eligible for this insurance; or

    (3) the end of the period for which premium has been paid for the Insured; or

    (4) the date the Insured enters military service (not including Reserve or National Guard).

**CONTINUATION OF INDIVIDUAL INSURANCE:** The insurance of an Insured may be continued, by payment of premium, beyond the date the Insured ceases to be eligible for this insurance, but not longer than:

    (1) twelve (12) months, if due to illness or injury; or

    (2) one (1) month, if due to temporary lay-off or approved leave of absence.

**INDIVIDUAL REINSTATEMENT:** The insurance of a terminated person may be reinstated if he/she is:

    (1) on an approved leave of absence; or

    (2) on temporary lay-off.

The person must return to active work with you within the period of time shown on the Schedule of Benefits. He/she must also be a member of a class eligible for this insurance.

The Person will not be required to fulfill the eligibility requirements of the Policy again. The insurance will go into effect on the day he/she returns to active work. If a Person returns after having resigned or having been discharged, he/she will be required to fulfill the eligibility requirements of the Policy again.

If a Person returns after terminating insurance at his/her request or for failure to pay premium when due, proof of good health must be approved by us before he/she may be reinstated.

## CONVERSION PRIVILEGE

An Insured can use this privilege when his/her insurance is no longer in force. It has several parts. They are:

A.  If the insurance ceases due to termination of employment or membership in any of this Policy's classes, an individual Life Insurance Policy may be issued. The Insured is entitled to a policy without disability or supplemental benefits. A written application for the policy must be made by the Insured within thirty-one (31) days after he/she terminates. The first premium must also be paid within that time. The issuance of the policy is subject to the following conditions:

   (1)  The policy will, at the option of the Insured, be on any one of our forms, except for term life insurance. It will be the standard type issued by us for the age and amount applied for;

   (2)  The policy issued will be for an amount not over what the Insured had before he/she terminated;

   (3)  The premium due for the policy will be at our usual rate. This rate will be based on the amount of insurance, class of risk and the Insured's age at date of policy issue; and

   (4)  Proof of good health is not required.

B.  If the insurance ceases due to the termination or amendment of this Policy, an individual Life Insurance Policy can be issued. An Insured must have been insured for at least five (5) years under this Policy. The same rules as in A above will be used, except that the face amount will be the lesser of:

   (1)  The amount of the Insured's Group Life benefit under this Policy. This amount will be less any amount he/she is entitled to under any group life policy issued by us or another insurance company; or

   (2)  $10,000.

C.  If the insurance reduces, as may be provided in this Policy, an individual Life Insurance Policy can be issued. The same rules as in A above will be used, except that the face amount will not be greater than the amount which ceased due to the reduction.

D.  If an Insured dies during the time in which he/she is entitled to apply for an individual policy, we will pay the benefit under the Group Policy that he/she was entitled to convert. This will be done whether or not the Insured applied for the individual policy.

E.  Any policy issued with respect to A, B or C above will be put in force at the end of the thirty-one (31) day period in which application must be made.

## PREMIUMS

**PREMIUM PAYMENT:** All premiums are to be paid by you to us, or to an authorized agent, on or before the due date. The premium due dates are stated on the Policy face page.

**PREMIUM RATE:** The premium due will be the rate per $1,000 of benefit multiplied by the entire amount of benefit volume then in force. We will furnish to you the premium rate on the Policy effective date and when it is changed. We have the right to change the premium rate:

(1) on any premium due date after the Policy is in force for 36 months; or

(2) when the extent of coverage is changed by amendment.

We will not change the premium rate due to (1) above more than once in any twelve (12) month period. We will tell you in writing at least thirty-one (31) days before the date of a change due to (1) above.

**GRACE PERIOD:** You may pay the premium up to 31 days after the date it is due. The Policy stays in force during this time. If the premium is not paid during the grace period, the Policy will be cancelled at the end of the grace period. You will still owe us the premium up to the date the Policy is cancelled.

LRS-6422-8 Ed. 3/82                    Page 6.13

## BENEFICIARY AND FACILITY OF PAYMENT

**BENEFICIARY:** The beneficiary will be as named in writing by the Insured to receive benefits at the Insured's death. This beneficiary designation must be on file with us or the Plan Administrator and will be effective on the date the Insured signs it. Any payment made by us before receiving the designation shall fully discharge us to the extent of that payment.

If the Insured names more than one beneficiary to share the benefit, he/she must state the percentage of the benefit that is to be paid to each beneficiary. Otherwise, they will share the benefit equally.

The beneficiary's consent is not needed if the Insured wishes to change the designation. His/her consent is also not needed to make any changes in this Policy.

If the beneficiary dies at the same time as the Insured, or within fifteen (15) days after his/her death but before we receive written proof of the Insured's death, payment will be made as if the Insured survived the beneficiary, unless noted otherwise.

If the Insured has not named a beneficiary, or the named beneficiary is not surviving at the Insured's death, any benefits due shall be paid to the first of the following classes to survive the Insured:

    (1)  the Insured's legal spouse;
    (2)  the Insured's surviving children (including legally adopted children), in equal shares;
    (3)  the Insured's surviving parents, in equal shares;
    (4)  the Insured's surviving siblings, in equal shares; or, if none of the above,
    (5)  the Insured's estate.

We will not be liable for any payment we have made in good faith.

**FACILITY OF PAYMENT:** If a beneficiary, in our opinion, cannot give a valid release (and no guardian has been appointed), we may pay the benefit to the person who has custody or is the main support of the beneficiary. Payment to a minor shall not exceed $1,000.

If the Insured has not named a beneficiary, or the named beneficiary is not surviving at the Insured's death, we may pay up to $2,500 of the benefit to the person(s) who, in our opinion, have incurred expenses in connection with the Insured's last illness, death or burial.

The balance of the benefit, if any, will be held by us, until an individual or representative:

    (1)  is validly named; or

    (2)  is appointed to receive the proceeds; and

    (3)  can give valid release to us.

The benefit will be held with interest at a rate set by us.

We will not be liable for any payment we have made in good faith.

## SETTLEMENT OPTIONS

The Insured may elect a different way in which payment of the Amount of Insurance can be made. He/she must provide a written request to us, for our approval, at our Administrative Office. If the option covers less than the full amount due, we must be advised of what part is to be under an option. Amounts under $2,000 or option payments of less than $20.00 each are not eligible.

If no instructions for a settlement option are in effect at the death of the Insured, the beneficiary may make the election, with our consent.

### OPTION A – FIXED TIME PAYMENT OPTION

Equal monthly payments will be made for any period chosen, up to thirty (30) years. The amount of each payment depends on the amount applied, the period selected and the payment rates we are using when the first payment is due. The rate of any monthly payment will not be less than shown in the table below. We reserve the right to change it. This change will apply only to requests for settlement elected after this change.

**Option A Table**
**Minimum Monthly Payment Rates for each $1,000 Applied**

| Years | Monthly Payment | Years | Monthly Payment | Years | Monthly Payment | Years | Monthly Payment | Years | Monthly Payment |
|---|---|---|---|---|---|---|---|---|---|
| 1 | $84.47 | 7 | $13.16 | 13 | $7.71 | 19 | $5.73 | 25 | $4.71 |
| 2 | 42.86 | 8 | 11.68 | 14 | 7.26 | 20 | 5.51 | 26 | 4.59 |
| 3 | 28.99 | 9 | 10.53 | 15 | 6.87 | 21 | 5.32 | 27 | 4.47 |
| 4 | 22.06 | 10 | 9.61 | 16 | 6.53 | 22 | 5.15 | 28 | 4.37 |
| 5 | 17.91 | 11 | 8.86 | 17 | 6.23 | 23 | 4.99 | 29 | 4.27 |
| 6 | 15.14 | 12 | 8.24 | 18 | 5.96 | 24 | 4.84 | 30 | 4.18 |

### OPTION B – FIXED AMOUNT PAYMENT OPTION

Each payment will be for an agreed fixed amount. The amount of each payment may not be less than $10.00 for each $1,000 applied. Interest will be credited each month on the unpaid balance and added to it. This interest will be at a rate set by us, but not less than the equivalent of 3% per year. Payments continue until the amount we hold runs out. The last payment will be for the balance only.

### OPTION C – INTEREST PAYMENT OPTION

We will hold any amount applied under this section. Interest on the unpaid balance will be paid each month at a rate set by us. This rate will not be less than the equivalent of 3% per year.

If a beneficiary dies while receiving payments under one of these options and there is no contingent beneficiary, the balance will be paid in one sum to the proper representative of the beneficiary's estate, unless otherwise agreed to in the instructions for settlement.

Requests for settlement options other than the three (3) set out above may be made. A mutual agreement must be reached between the individual entitled to elect and us.

## WAIVER OF PREMIUM IN EVENT OF TOTAL DISABILITY

We will extend the Amount of Insurance during a period of Total Disability for one (1) year if:

(1)  the Insured becomes totally disabled prior to age 70;
(2)  the Total Disability begins while he/she is insured;
(3)  the Total Disability begins while this Policy is in force;
(4)  the Total Disability lasts for at least 6 months;
(5)  the premium continues to be paid; and
(6)  we receive proof of Total Disability within one (1) year from the date it began.

After proof of Total Disability is approved by us, neither you or the Insured is required to pay premiums.  Also, any premiums paid from the start of the Total Disability will be returned.

We will ask the Insured to submit annual proof of continued Total Disability.  The Amount of Insurance may then be extended for additional one (1) year periods.  The Insured may be required to be examined by a Physician approved by us as part of the proof.  We will not require the Insured to be examined more than once a year after the insurance has been extended two (2) full years.

The Amount of Insurance extended will be limited to the amount of basic group life coverage on the life of the Insured that was in force at the time that Total Disability began excluding any additional benefits.  This amount will not increase.  This amount will reduce or cease at any time it would reduce or cease if the Insured had not been totally disabled.  If the Insured dies, we will be liable under this extension only if written proof of death is received by us.

The Amount of Insurance extended for an Insured will cease on the earliest of:

(1)  the date he/she no longer meets the definition of Total Disability; or
(2)  the date he/she refuses to be examined; or
(3)  the date he/she fails to furnish the required proof of Total Disability.

The Insured may use the conversion privilege when this extension ceases.  Please refer to the Conversion Privilege section for rules.  An Insured is not entitled to conversion if he/she returns to work and is again eligible for the insurance under this Policy.  If the Insured uses the conversion privilege, benefits will not be payable under the Waiver of Premium in Event of Total Disability provision unless the converted policy is surrendered to us.

If the Insured qualifies for benefits in accordance with the Waiver of Premium in Event of Total Disability provision because he/she has been diagnosed by a Physician as totally disabled due to the following Condition(s) or Procedure(s), as later defined;

(1)  Life Threatening Cancer; or
(2)  Heart Attack (Myocardial Infarction); or
(3)  Kidney (Renal) Failure; or
(4)  Receipt of Major Organ Transplant; or
(5)  Stroke,

we will pay to the Insured an additional, one time, lump sum benefit in an amount equal to 10% of the death benefit under the basic life portion of this Policy up to a maximum of $100,000.

This lump sum benefit applies only to the first Condition or Procedure to occur among those hereinafter defined which qualifies the Insured for waiver of premium benefits.  No further lump sum benefits will be payable under this provision during the same or any subsequent periods of Total Disability, or as a result of the occurrence of any other Condition or Procedure.

Definition(s):

"Condition(s) or Procedure(s)" mean only the following:

"Life Threatening Cancer" means a malignant neoplasm (including hematologic malignancy), as diagnosed by a Physician who is a board certified oncologist, and which is characterized by the uncontrolled growth and spread of malignant cells

and the invasion of tissue, and which is not specifically excluded. The following types of cancer are not considered a Life Threatening Cancer: (1) early prostate cancer diagnosed as T2c or less according to the TNM scale; (2) colorectal cancer diagnosed as T2, N1, M0 or less according to the TNM scale; (3) breast cancer diagnosed as T3, N2, M0 or less according to the TNM scale; (4) First Carcinoma in Situ; (5) pre-malignant lesions (such as intraepithelial neoplasia); (6) brain glioma; (7) benign tumors or polyps; (8) tumors in the presence of the Human Immunodeficiency Virus (HIV) or Acquired Immune Deficiency Syndrome (AIDS); or (9) any skin cancer other than invasive malignant melanoma in the dermis or deeper, or skin malignancies that have become Life Threatening Cancers.

"First Carcinoma in Situ" means the first diagnosis of cancer in which the tumor cells still lie within the tissue of the site of origin without having invaded neighboring tissue. First Carcinoma in Situ must be diagnosed pursuant to a pathological diagnosis or clinical diagnosis.

"Heart Attack (Myocardial Infarction)" means the death of a segment of the heart muscle as a result of a blockage of one or more coronary arteries. In order to be covered under this provision, the diagnosis by a Physician of Heart Attack (Myocardial Infarction) must be based on:

   (1) new electrocardiographic changes consistent with and supporting a diagnosis of Heart Attack (Myocardial Infarction); and
   (2) a concurrent diagnostic elevation of cardiac enzymes; and
   (3) therapeutic and functional classifications, 3 or above and C or above respectively, according to the New York Heart Association.

"Kidney (Renal) Failure" means the chronic irreversible failure of both of the kidneys (end stage renal disease), which requires treatment with dialysis on a regular basis. Kidney Failure is covered under this provision only if the diagnosis has been made by a Physician who is a board certified nephrologist.

"Physician" means a duly licensed practitioner who is recognized by the law of the jurisdiction in which treatment is received as qualified to treat the type of condition for which claim is made. The Physician may not be the Insured or a member of his/her immediate family and must be approved by us.

"Receipt of Major Organ Transplant" means that the Insured has been the recipient of a major organ transplant and that there is clinical evidence of an Insured's major organ(s) failure which, according to the diagnosis of a Physician, required the failing organ(s) or tissue of the Insured to be replaced with organ(s) or tissue from a suitable donor under generally accepted medical procedures. Organs or tissues covered by this definition are limited to liver, kidney, lung, entire heart, pancreas, or pancreas-kidney.

"Stroke" means a cerebrovascular accident or infarction (death) of brain tissue, as diagnosed by a Physician, which is caused by hemorrhage, embolism, or thrombosis producing measurable, neurological deficit persisting for at least one hundred eighty (180) days following the occurrence of the Stroke. Stroke does not include Transient Ischemic Attack (TIA) or other cerebral vascular events.

Receipt of this additional lump sum payment may be taxable. The Insured should seek assistance from his/her own personal tax advisor.

## CLAIMS PROVISIONS

**NOTICE OF CLAIM:** Written notice must be given to us within thirty-one (31) days after the Loss occurs, or as soon as reasonably possible. The notice should be sent to us at our Administrative Offices or to our authorized agent. The notice should include the Insured's name, the Policy Number and your name.

**CLAIM FORMS:** When we receive written notice of a claim, we will send claim forms to the claimant within fifteen (15) days. If we do not, the claimant will satisfy the requirements of written proof of loss by sending us written proof as shown below. The proof must describe the occurrence, extent and nature of the loss.

**PROOF OF LOSS:** For any covered Loss, written proof must be sent to us within ninety (90) days. If it is not reasonably possible to give proof within ninety (90) days, the claim is not affected if the proof is sent as soon as reasonably possible. In any event, proof must be given within 1 year, unless the claimant is legally incapable of doing so.

**PAYMENT OF CLAIMS:** Payment will be made as soon as proper proof is received. All benefits will be paid to the Insured if living. Any benefits unpaid at the time of death, or due to death, will be paid to the beneficiary.

Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

**PHYSICAL EXAMINATION:** At our own expense, we will have the right to have an Insured examined as reasonably necessary when a claim is pending. We can have an autopsy made unless prohibited by law.

**LEGAL ACTION:** No legal action may be brought against us to recover on Policy within sixty (60) days after written proof of loss has been given as required by Policy. No action may be brought after three (3) years (Kansas, five (5) years; South Carolina, six (6) years) from the time written proof of loss is required to be submitted.

## FAMILY AND MEDICAL LEAVE OF ABSENCE EXTENSION

We will allow the Insured's coverage to continue for up to twelve (12) weeks in a twelve (12) month period, if the Insured is eligible for, and you have approved, a Family and Medical Leave of Absence under the terms of the Family and Medical Leave Act of 1993 for any of the following reasons:

(1)  To provide care after the birth of a son or daughter; or
(2)  To provide care for a son or daughter upon legal adoption; or
(3)  To provide care after the placement of a foster child in the Insured's home; or
(4)  To provide care to a spouse, son, daughter, or parent due to serious illness; or
(5)  To take care of his/her own serious health condition as explained below.

If the Insured, due to his/her own serious health condition, meets the definition of Total Disability in this Policy, he/she will be considered Totally Disabled and eligible for Waiver of Premium benefits according to the Waiver of Premium in Event of Total Disability provision. If the Insured, due to his/her own serious health condition, is on a Family and Medical Leave of Absence, but not eligible for Waiver of Premium benefits under this Policy, insurance coverage will be continued under this extension.

The Insured will not qualify for the Family and Medical Leave of Absence Extension unless we have received proof from you, in a form satisfactory to us, that the Insured has been granted a leave under the terms of the Family and Medical Leave Act of 1993. Such proof: (1) must outline the terms of the Insured's leave; and (2) give the date the leave began; and (3) the date it is expected to end; and (4) must be received by us within thirty-one (31) days after a claim for benefits has been filed with us.

If you grant the Insured a Family and Medical Leave of Absence, the following applies to the Insured who has been granted the leave:

(1)  While the Insured is on an approved Family and Medical Leave of Absence, the required premium must be paid according to the terms specified in this Policy to keep the insurance in force.

(2)  Coverage will terminate for any Insured if the Insured does not return to work as scheduled according to the terms of his/her agreement with you; however, the Insured is eligible to convert his/her coverage under the Conversion Privilege. In no case will coverage be extended under this benefit beyond twelve (12) weeks in a twelve (12) month period. Insurance will not be terminated for an Insured who becomes Totally Disabled during the period of the leave and who is eligible for Waiver of Premium benefits, if any, according to the terms of this Policy.

(3)  This extension is not available if the Insured converts his/her coverage under the Conversion Privilege.

(4)  While the Insured is on an approved Family and Medical Leave of Absence, he/she will be considered Actively at Work in all instances unless such leave is due to his/her own illness, injury, or disability. Changes such as revisions to coverage because of age, class or salary changes will apply during the leave except that increases in amount of insurance, whether automatic or subject to election, are not effective for an Insured who is not Actively at Work until such time as he/she returns to Active Work for one full day.

All other terms and conditions of this Policy will remain in force while an Insured is on an approved Family and Medical Leave of Absence.

## MILITARY SERVICES LEAVE OF ABSENCE COVERAGE

We will allow the Insured's coverage to continue for up to twelve (12) weeks in a twelve (12) month period, if the Insured enters the military service of the United States. While the Insured is on a Military Services Leave of Absence, the required premium must be paid according to the terms specified in this Policy to keep the insurance in force. Changes such as revisions to coverage because of age, class or salary changes will apply during the leave except that increases in amount of insurance, whether automatic or subject to election, are not effective for such an Insured until he/she has returned to work from Military Services Leave of Absence for one full day. All other terms and conditions of this Policy will remain in force during this continuation period. The Insured's continued coverage will cease on the earliest of the following dates:

(1) the date this Policy terminates; or
(2) the date ending the last period for which any required premium was paid; or
(3) twelve (12) weeks from the date the Insured's continued coverage began.

This Policy, however, does not cover any loss which occurs while on active duty in the military service if such loss is caused by or arises out of such military service, including but not limited to war or act of war (whether declared or undeclared).

## PORTABILITY

An Insured may continue insurance coverage under this Policy if coverage would otherwise terminate because he/she ceases to be an Eligible Person, for reasons other than the termination of this Policy, or the Insured's retirement, provided he/she:
    (1) notifies us in writing within thirty-one (31) days from the date he/she ceases to be eligible; and
    (2) remits the necessary premiums when due; and
    (3) is not considered Totally Disabled under the Waiver of Premium in Event of Total Disability provision, if applicable; and
    (4) has been covered for twelve (12) months under this Policy and/or the prior group life insurance policy.

Such coverage may be continued for a period of 2 years beginning on the date he/she is no longer an Eligible Person.

The amount of coverage available under the Portability provision will be the current amount of coverage the Insured is insured for under this Policy on the last day he/she was Actively at Work.  However, the amount of coverage will never be more than:
    (1) the highest amount of life insurance available to Eligible Persons; or
    (2) a total of $500,000 from all RSL group life and accidental death and dismemberment insurance combined, whichever is less.

The premium charged to continue coverage will be based on the prevailing rate charged to Insureds who choose to continue coverage under the Portability provision.  Such premium will be billed directly to the Insured on a quarterly, semi-annual or annual basis.

If an Insured's coverage under this Policy includes Accidental Death and Dismemberment, then such benefits may be continued under this Policy.

Insurance coverage continued under this provision for an Insured will terminate on the first of the following to occur:
    (1) the date this Policy terminates; or
    (2) the end of the period for which premium has been paid; or
    (3) the date the Insured is covered under another group term life insurance policy; or
    (4) at the end of the 2 year period; or
    (5) at any time coverage would normally terminate according to the terms of this Policy had the Insured continued to be an Eligible Person.

In addition, coverage will reduce at any time it would normally reduce according to the terms of this Policy had the Insured continued to be an Eligible Person.

If insurance coverage terminates due to (1) or (4) above, it may be converted to an individual life insurance policy.  The conversion will be subject to the terms and conditions set forth under the Conversion Privilege.

## GROUP TERM LIFE INSURANCE LIVING BENEFIT RIDER

**THIS RIDER ADDS AN ACCELERATED BENEFIT PROVISION. RECEIPT OF THIS ACCELERATED BENEFIT WILL REDUCE THE DEATH BENEFIT AND MAY BE TAXABLE. INSUREDS SHOULD SEEK ASSISTANCE FROM THEIR PERSONAL TAX ADVISOR.**

Attached to Group Policy Number: GL 140621
Issued to Group Policyholder: Christina School District

This Rider is attached to and made a part of the Policy indicated above. The Policy is hereby amended, in consideration of the application for this coverage, by the addition of the following benefit. In this Rider, Reliance Standard Life Insurance Company will be referred to as "we", "us", "our".

**DEFINITIONS:** This section gives the meaning of terms used in this Rider. The Definitions of the Policy and Certificate also apply unless they conflict with Definitions given here.

"Certified" or "Certification" refers to a written statement, made by a Physician on a form provided by us, as to the Insured's Terminal Illness.

"Certificate" means the document, issued to each Insured, which explains the terms of his coverage under the Group Life Insurance Policy.

"Death Benefit" means the insurance amount payable under the Policy at the death of the Insured. It does not include any amount that is only payable in the event of Accidental Death.

"Insured" means only a primary Insured. Dependents are not eligible for coverage under this Living Benefit Rider.

"Physician" means a duly licensed practitioner, acting within the scope of his license, who is recognized by the law of the state in which diagnosis is received. The Physician may not be the Insured or a member of his immediate family.

"Policy" means the Group Life Insurance Policy issued to the Group Policyholder under which the Insured is covered.

"Terminally Ill" or "Terminal Illness" refers to an Insured's illness or physical condition that is Certified by a Physician to reasonably be expected to result in death in less than 12 months.

"Written Request" means a request made, in writing, by the Insured to us.

All pronouns include either gender unless the context indicates otherwise.

**DESCRIPTION OF COVERAGE:** This benefit is payable to the Insured if, after having been covered under this Rider for at least 60 days, an Insured is Certified as Terminally Ill. In order for this benefit to be paid:

   (1)  the Insured must make a Written Request; and

   (2)  we must receive from any assignee or irrevocable beneficiary their signed acknowledgment and agreement to payment of this benefit.

We may, at our option, confirm the terminal diagnosis with a second medical exam performed at our own expense.

**AMOUNT OF THE LIVING BENEFIT:** The Living Benefit will be an amount equal to 75% of the Death Benefit applicable to the Insured under the Policy on the date of the Certification of Terminal Illness, subject to a maximum benefit of $500,000. This benefit may be paid as a single lump sum. The Living Benefit is payable one time only for any Insured under this Rider.

**EFFECT OF BENEFIT:** If an Insured becomes eligible for, and elects to receive this benefit, it will have the following effects:

   (1)  The Death Benefit payable for such Insured will be reduced by the amount equal to the Living Benefit paid to such Insured. The amount of the Living Benefit plus the corresponding Death Benefit will not exceed the amount that

would have been paid as the Death Benefit in the absence of this Rider.

(2) Any amount of insurance that would otherwise be continued under a Waiver of Premium provision will be reduced proportionately, as will the maximum Face Amount available under the Conversion Privilege.

**TERMINATION OF AN INDIVIDUAL'S COVERAGE UNDER THIS RIDER:** The coverage of any Insured under this Rider will terminate on the first of the following:

(1) the date his coverage under the Policy terminates;

(2) the date of payment of the Living Benefit for his Terminal Illness; or

(3) the date he attains age 75.

**ADDITIONAL PROVISIONS:** This Rider takes effect on the Effective Date shown. It will terminate on the date the Group Policy terminates. It is subject to all the terms of the Group Policy not inconsistent herein.

In witness whereof, we have caused this Rider to be signed by our Secretary.

*Charles Denaro*

Secretary

JS 44 Rev 3/99

# CIVIL COVER SHEET

The JS-120
44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.

## I. (a) PLAINTIFFS
Reliance Standard Life Insurance Company

## DEFENDANTS
Jermease Ross and Teresa Gonzalez

**(b)** County Of Residence Of First Listed Plaintiff  **Philadelphia**
(EXCEPT IN U.S. PLAINTIFF CASES)

County Of Residence Of First Listed  **New Castle**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorneys (Firm Name, Address, And Telephone Number)

George T. Lees, III, Esquire

Rawle & Henderson, LLP

300 Delaware Avenue - Suite 1015

Wilmington, DE 19801

Attorneys (If Known)

## II. BASIS OF JURISDICTION  (PLACE AN "X" IN ONE BOX ONLY)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
For diversity cases only
(PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☒1 | Incorporated or Principal Place of Business in this State | ☐4 | ☐4 |
| Citizen of Another State | ☒2 | ☐2 | Incorporated or Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☒3 | Foreign Nation | ☐6 | ☐6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

### CONTRACT
☒110 Insurance
☐120 Marine
☐130 Miller Act
☐140 Negotiable Instrument
☐150 Recovery of Overpayment & Enforcement of Judgment
☐151 Medicare Act
☐152 Recovery of Defaulted Student Loans (Excl Veterans)
☐153 Recovery of Overpayment of Veteran's Benefits
☐160 Stockholder's Suits
☐190 Other Contract
☐195 Contract Product Liability

### TORTS
**PERSONAL INJURY**
☐310 Airplane
☐315 Airplane Product Liability
☐320 Assault, Libel & Slander
☐330 Federal Employers' Liability
☐340 Marine
☐345 Marine Product Liability
☐350 Motor Vehicle
☐355 Motor Vehicle Product Liability
☐360 Other Personal Injury

**PERSONAL INJURY**
☐362 Personal Injury~ Med Malpractice
☐365 Personal Injury~ Product Liability
☐368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐370 Other Fraud
☐371 Truth in Lending
☐380 Other Personal Property Damage
☐385 Property Damage Product Liability

### FORFEITURE/PENALTY
☐610 Agriculture
☐820 Other Food & Drug
☐625 Drug Related Seizure of Property 21, USC
☐630 Liquor Laws
☐640 R.R. & Truck
☐650 Airline Regs
☐660 Occupational Safety/Health
☐690 Other

### LABOR
☐710 Fair Labor Standards Act
☐720 Labor/Mgmt. Relations
☐730 Labor/Mgmt. Reporting & Disclosure Act
☐740 Railway Labor Act
☐790 Other Labor Litigation
☐791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
☐422 Appeal 28 USC 158
☐423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐820 Copyrights
☐830 Patent
☐840 Trademark

### SOCIAL SECURITY
☐861 HIA (1395FF)
☐862 Black Lung (923)
☐863 DIWC/ DIWW(405(g))
☐864 SSID Title XVI
☐865 RSI (405(g))

### FEDERAL TAX SUITS
☐870 Taxes
☐871 IRS – Third Party 20 USC 7609

### OTHER STATUTES
☐400 State Reapportionment
☐410 Antitrust
☐430 Banks and Banking
☐450 Commerce/ICC Rates/etc.
☐460 Deportation
☐470 Racketeer Influenced and Corrupt Organizations
☐810 Selective Service
☐850 Securities/Commodities/ Exchange
☐875 Customer Challenge 12 USC 3410
☐891 Agricultural Acts
☐892 Economic Stabilization Act
☐893 Environmental Matters
☐894 Energy Allocation Act
☐895 Freedom of Information Act
☐900 Appeal of Fee Determination Under Equal Access to Justice
☐950 Constitutionality of State Statutes
☐890 Other Statutory Actions

### REAL PROPERTY
☐210 Land Condemnation
☐220 Foreclosure
☐230 Rent Lease & Ejectment
☐240 Torts to Land
☐245 Tort Product Liability
☐290 All Other Real Property

### CIVIL RIGHTS
☐441 Voting
☐442 Employment
☐443 Housing/ Accommodations
☐444 Welfare
☐440 Other Civil Rights

### PRISONER PETITIONS
☐510 Motions to Vacate Sentence
**HABEAS CORPUS:**
☐530 General
☐535 Death Penalty
☐540 Mandamus & Other
☐550 Civil Rights
☐555 Prison Condition

## V. ORIGIN  (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite The U.S. Civil Statute Under Which You Are Filing And Write A Brief Statement Of Cause)
Do Not Cite Jurisdictional Statutes Unless Diversity.) 28 USC §1331; 29 USC §1132(e): Federal question regarding a group term life insurance policy governed by the Employee Retirement Income Security Act of 1974 (ERISA)

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ YES  ☒ NO

## VIII. RELATED CASE(S) IF ANY
(See instructions)

JUDGE _____

DOCKET NUMBER _____

DATE: _____

SIGNATURE OF ATTORNEY OF RECORD _____

RECEIPT # _____     AMOUNT $ _____     APPLYING IFP _____     JUDGE _____     MAG. JUDGE _____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _7 - 655_____

# ACKNOWLEDGMENT
# OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____3_____ COPIES OF AO FORM 85.

_10/19/2007_____        _Jade M Lord_____
(Date forms issued)             (Signature of Party or their Representative)

                                _Jade M. Lord_____
                                (Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action