IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RELIANCE STANDARD LIFE           )
INSURANCE COMPANY,               )
                                 )
        Plaintiff                )
                                 )
        v.                       )          Civil Action No. 07-655
                                 )
JERMEASE ROSS and                )
TERESA GONZALEZ, as Guardian     )
of the Property of Elizabeth Ware's )
Minor Children                   )
                                 )
        Defendants               )

## MOTION FOR SUMMARY JUDGMENT
## BY DEFENDANT TERESA GONZALEZ

Defendant Teresa Gonzalez ("Defendant Gonzalez"), in her capacity as guardian

of the property of Elizabeth Ware's three children, all minors (the "Children"), by and

through her undersigned counsel, hereby moves for summary judgment pursuant to Fed.

R. Civ. P. 56 for all the following reasons:

### Background Facts

1.      On October 17, 2007, Plaintiff commenced this action by filing its

Interpleader Complaint in this Court (attached as Exhibit A).

2.      Plaintiff, through its Interpleader Complaint, sought to resolve the

competing claims of the Defendants to insurance benefits held by the Plaintiff.

3.      Benefits under the insurance policies in question, a group life policy and a

group accident policy, both insured by the Plaintiff (the "Policies"), became payable upon

the death of Defendant Gonzalez's sister, Elizabeth Ware ("Decedent"). The group life and group accident policies are attached as Exhibits B and C, respectively.

4.　　The Decedent died as a result of multiple stab wounds on March 2, 2007. See Certificate of Death, a true and correct copy of which is attached as Exhibit D.

5.　　In the plea agreement dated February 1, 2008, a true and correct copy of which is attached as Exhibit E, Defendant Jermease Ross ("Defendant Ross") pled guilty to the Decedent's murder in the first degree.

6.　　The Policies provided benefits payable in the event of Decedent's death in the amount of $84,000. See Exhibit F.

7.　　The named beneficiaries under the Policies, in one-quarter equal shares, are Defendant Ross and the Children. See Exhibit G.

8.　　The Children each received their respective one-quarter shares of the benefits payable under the Policies, and such funds are currently held in guardianship accounts under the supervision of the Court of Chancery of the State of Delaware, with their aunt, Defendant Gonzalez, serving as guardian of the property for each of the Children. See redacted Guardianship Order attached as Exhibit H.

9.　　The remaining one-quarter share of the benefits, totaling $21,000 (the "Disputed Benefits"), was claimed by both Defendant Ross (see Exhibit I) and by the Children, through their guardian, Defendant Gonzalez (see Exhibit J).

**Standard of Review**

10.　　Under Fed. R. Civ. P. 56, the moving party is entitled to summary judgment if it can demonstrate that: (1) there is no genuine dispute as to any material fact; and (2) summary judgment is appropriate as a matter of law. Anderson v. Liberty

Lobby Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

11.    Under Third Circuit precedent, "[a] disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law... Thus, while the facts must be viewed in the light most favorable to the nonmoving party and all inferences must be drawn in that party's favor, there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party... If the evidence is merely colorable... or is not significantly probative... summary judgment may be granted." Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992) (citations and internal quotations omitted).

12.    Moreover, the evidence supplied by the nonmoving party must be more than "mere allegations." Olson v. General Elec. Aerospace, 101 F.3d 947, 951 (3d Cir. 1996).

13.    In the instant case, no party has offered even allegations contrary to the facts as presented above.

14.    Therefore, there exists no genuine dispute as to any material fact, and this case is appropriate for summary judgment.

## Argument

15.    The Children are entitled to the Disputed Benefits under 12 *Del. C.* § 2322, more commonly known as the Delaware "Slayer's Statute", under which the slayer is treated as having predeceased the insured, and the beneficiary provisions of the

Policies, which provide for the children of the insured to take in the event of the failure of any named beneficiary. See Exhibit B, page 7.14, and Exhibit C, page 14.

16.    Having entered a plea of guilty to the charge of murder in the first degree under 11 *Del. C.* §636 in connection with the death of the Decedent, Defendant Ross is a "slayer" as defined by 12 *Del. C.* § 2322(a)(3). See Exhibit E.

17.    Under 12 *Del. C.* § 2322(h)(1), the proceeds payable under the Policies are to be paid according to the terms of the respective insurance contracts as though the slayer, Defendant Ross, had predeceased the Decedent.

18.    Each of the Policies provides that, in the event a named beneficiary is not surviving at the insured's death, the benefits due are to be paid first to the insured's legal spouse, and in the event there is no such spouse, then to the insured's surviving children. See Exhibit B, page 7.14, and Exhibit C, page 14.

19.    As the Decedent was unmarried at the time of her death, the Disputed Benefits are payable to the Children.

WHEREFORE, Defendant Teresa Gonzalez, in her capacity as guardian of the property of Elizabeth Ware's minor children, respectfully requests that this Court enter an Order:

A.    Awarding the full amount of benefits due under the Policies, totaling $21,000, with interest, to the Children, care of Defendant Gonzalez as guardian; and

B.    Affording any such other and additional relief as the circumstances may warrant and the Court deems just.

4

CONNOLLY BOVE LODGE & HUTZ LLP

Charles J. Durante (#800)
Scott E. Swenson (#4766)
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
(302) 658-9141
*Attorneys for Defendant Teresa Gonzalez*

DATED: June 19, 2008

## CERTIFICATE OF SERVICE

I, Scott E. Swenson, Esq., hereby certify that on June 19, 2008, I electronically filed the foregoing MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using CM/ECF, which will send notification of such filing to the registered attorneys of record that the document has been filed and is available for viewing and downloading.

**BY CM/ECF:**

        George T. Lees, III, Esquire
        Rawle & Henderson, LLP
        300 Delaware Avenue, Suite 1015
        P.O. Box 588
        Wilmington, DE 19899

I further certify that on June 19, 2008, the foregoing document was served on the following persons as indicated below:

**BY REGISTERED MAIL**
        Jermease Ross
        SBI #00354048
        Howard R. Young Correctional Inst.
        P.O. Box 9279
        Wilmington, DE 19809

        Scott E. Swenson (# 4766)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RELIANCE STANDARD LIFE
INSURANCE COMPANY                    :
                                     :
            Plaintiff                :        CIVIL ACTION
                                     :
            v.                       :        NO.:    0 7 - 6 5 5
JERMEASE ROSS and                    :
TERESA GONZALEZ                      :
                                     :
            Defendants               :

### INTERPLEADER COMPLAINT

Reliance Standard Life Insurance Company ("Reliance Standard") by and through

its undersigned counsel, hereby files this Interpleader Complaint and avers as follows:

### JURISDICTION

1.      This Court has jurisdiction over this Interpleader Complaint pursuant to 28

U.S.C. §1331 and 29 U.S.C. §1132(e) because the controversy involves a federal

question regarding a group term life insurance policy and group accident policy that are

part of an employee welfare benefit plan governed by the Employee Retirement Income

Security Act of 1974 (ERISA), 29 U.S.C. §1001, *et seq.*

### VENUE

2.      Venue is appropriate in this district pursuant to 28 U.S.C. §1391 because

one or more of the defendants resides in this district and because a substantial part of the

events giving rise to this claim occurred within this district.

## PARTIES

3.    Reliance Standard is an insurance company existing under the laws of the State of Illinois and is authorized to do business in the State of Delaware with its home office in Chicago, Illinois and its administrative office at 2001 Market Street, Suite 1500, Philadelphia, PA.

4.    Jermease Ross is an individual and is believed to be a resident of the State of Delaware.  His last known address is SBI# 00354048, Howard R. Young Correctional Inst., P.O. Box 9279, Wilmington, DE 19809.

5.    Teresa Gonzalez is an individual and is believed to be a resident of the State of Colorado.  Her last known address is 8196 S. Clarkson Court, Centennial, CO 80122.

## FACTUAL ALLEGATIONS

6.    Decedent Elizabeth Ware was stabbed to death on March 2, 2007.  See Certificate of Death, a true and correct copy of which is attached as Exhibit "A."[1]

7.    At the time of her death, decedent was a participant in a group term life insurance plan, insured by Reliance Standard policy number GL 140621 (the "Life Policy") and a group accident policy insured by Reliance Standard policy number VAR 203605 (the "Accident Policy") which were sponsored by her employer as part of its employee welfare benefit plan.  See Life Policy and Accident Policy, a true and correct copy of which are attached as Exhibits "B" and "C."

---

[1] All exhibits have been partially redacted to omit sensitive information such as home addresses and telephone numbers, social security numbers and dates of birth.

8.    As a result of decedent's death, benefits totaling $84,000 became payable. See Proof of Loss Claim Statement, a true and correct copy of which is attached as Exhibit "D."

9.    Decedent named her fiancé, Jermease Ross, as a 25% beneficiary to her Life Policy and Accident Policy. See Designation of Change of Beneficiary Form, dated May 6, 2006, a true and correct copy of which is attached as Exhibit "E."

10.    Jermease Ross has been charged with decedent's murder. See May 3, 2007 "Delaware Online" News Article, a true and correct copy of which is attached as Exhibit "F."

11.    Jermease Ross has asserted a claim for benefits due under the policies. See Jermease Ross claim statement, a true and correct copy of which is attached as Exhibit "G."

12.    Reliance Standard received a competing claim for Mr. Ross's benefits under the policies from decedent's three minor children. See claim statements, true and correct copies of which are attached as Exhibit "H."

13.    Theresa Gonzalez is legal guardian of the property of decedent's three minor children. See Order Appointing Guardian, a true and correct copy of which is attached as Exhibit "I."

14.    As of the date of this Complaint, Jermease Ross and Teresa Gonzalez maintain competing claims to benefits in the amount of $21,000, which reflects 25% of the $84,000, and which remains due under the policies.

## COUNT I-INTERPLEADER

15.    Reliance Standard incorporates paragraphs 1 through 14 of this Interpleader Complaint as is the same were set forth herein at length.

16.    The claim of Jermease Ross competes with that of Teresa Gonzalez.

17.    Reliance Standard is unable to determine the proper beneficiary under the policies and is at risk of multiple liability due to defendants' competing claims.

18.    Reliance Standard claims no interest in the benefits due, with the exception of reasonable attorney fees and costs incurred in relation to this Interpleader Complaint.

19.    Reliance Standard is an innocent entity and has in no way colluded with any of the claimants.

20.    As a result of the continuing and conflicting claims, this Interpleader is necessary to ensure that remaining benefits totaling $21,000 are paid to the proper person.

WHEREFORE, Reliance Standard Life Insurance Company respectfully requests that this Court enter an Order:

> (a) directing Reliance Standard to deposit benefits due under the Life Policy and Accident Policy, totaling $21,000, together with any applicable interest into the registry of this Court, until the issue of entitlement to benefits is adjudicated;
>
> (b) discharging Reliance standard from any and all liability related to the benefits due under the Life Policy and Accident Policy, expect to those persons to whom this Court shall adjudge entitled to the remaining benefits;
>
> (c) enjoining any parties, named or unnamed, from initiating any action against Reliance Standard regarding any benefits due under the Life Policy and Accident Policy; and

(d) awarding to Reliance Standard its fees and costs together with any other relief this Court deems fair and just.

RAWLE & HENDERSON, LLP

By: _____

George T. Lees, III, Esquire (I.D. # 3647)
glees@rawle.com
300 Delaware Avenue – Suite 1015
P.O. Box 0588
Wilmington, DE 19899-0588
(302) 778-1200
Attorneys for Plaintiff,
Reliance Life Insurance Company

**Of Counsel**
Joshua Bachrach, Esquire
RAWLE & HENDERSON, LLP
40 Lake Center Executive Park
Suite 200, 401 Route 73
Marlton, NJ 08053
(856) 797-8915

# RELIANCE STANDARD
## Life Insurance Company

Home Office: Chicago, Illinois • Administrative Office: Philadelphia, Pennsylvania

**POLICYHOLDER:** Christina School District

**POLICY NUMBER:** GL 140621

**EFFECTIVE DATE:** July 1, 2006

**ANNIVERSARY DATES:** July 1, 2007 and each July 1st thereafter.

**PREMIUM DUE DATES:** The first premium is due on the Effective Date. Further premiums are due monthly, in advance, on the first day of each month.

The Policy is delivered in Delaware and is governed by its laws.

We agree to provide insurance to you in exchange for the payment of premium and a signed Application. The Policy provides benefits for loss of life from injury or sickness. It insures the eligible persons for the amount of insurance shown on the Schedule of Benefits. The insurance is subject to the terms and conditions of the Policy.

The effective date of the Policy is shown above. Insurance starts and ends at 12:01 A.M., Local Time, at your main address. It stays in effect as long as premium is paid when due. The "TERMINATION OF THE POLICY" section of the GENERAL PROVISIONS explains when the insurance can be ended.

The Policy is signed by the President and Secretary.

Secretary

President

Countersigned_____
Licensed Resident Agent

**GROUP LIFE INSURANCE**
**NON-PARTICIPATING**

This Group Life Policy amends the Group Life Policy previously issued to you by us. It is issued on November 3, 2006.

LRS-6422 Ed. 2/84

**RELIANCE STANDARD LIFE INSURANCE COMPANY**
Philadelphia, Pennsylvania

**GROUP POLICY NUMBER:** GL 140621                    **POLICY EFFECTIVE DATE:** July 1, 2006

**POLICY DELIVERED IN:** Delaware                    **ANNIVERSARY DATE:** July 1st in each year

Application is made to us by: Christina School District

This Application is completed in duplicate, one copy to be attached to your Policy and the other returned to us.

It is agreed that this Application takes the place of any previous application for your Policy.

Signed at _____ this _____ day of _____

Policyholder: _____        Agent: _____

By: _____                    _____
          (Signature)                                                    (Licensed Resident Agent)

_____
          (Title)

Please sign and return.

LRS-6422-A Ed. 3/82



*BC1COAPGL     14062111/01/2006*RSL
*BC2COAPChristina School District

**RELIANCE STANDARD LIFE INSURANCE COMPANY**
Philadelphia, Pennsylvania

**GROUP POLICY NUMBER:** GL 140621

**POLICY DELIVERED IN:** Delaware

**POLICY EFFECTIVE DATE:** July 1, 2006

**ANNIVERSARY DATE:** July 1st in each year

Application is made to us by: Christina School District

This Application is completed in duplicate, one copy to be attached to your Policy and the other returned to us.

It is agreed that this Application takes the place of any previous application for your Policy.

Signed at _____ this _____ day of _____

Policyholder: _____ Agent: _____

By: _____
(Signature)

_____
(Licensed Resident Agent)

_____
(Title)

LRS-6422-A Ed. 3/82

# TABLE OF CONTENTS

|  | Page |
|---|---|
| SCHEDULE OF BENEFITS | 1.0 |
| DEFINITIONS | 2.0 |
| GENERAL PROVISIONS | 3.0 |
|    Entire Contract | |
|    Changes | |
|    Incontestability | |
|    Records Maintained | |
|    Clerical Error | |
|    Misstatement of Age | |
|    Assignment | |
|    Conformity With State Laws | |
|    Certificate of Insurance | |
|    Policy Termination | |
| INDIVIDUAL ELIGIBILITY, EFFECTIVE DATE AND TERMINATION | 4.0 |
|    General Group | |
|    Eligible Classes | |
|    Effective Date of Individual Insurance | |
|    Termination of Individual Insurance | |
|    Continuation of Individual Insurance | |
|    Individual Reinstatement | |
| CONVERSION PRIVILEGE | 5.0 |
| PREMIUMS | 6.0 |
|    Premium Payment | |
|    Premium Rate | |
|    Grace Period | |
| BENEFICIARY AND FACILITY OF PAYMENT | 7.0 |
| SETTLEMENT OPTIONS | 8.0 |
| WAIVER OF PREMIUM IN EVENT OF TOTAL DISABILITY | 9.0 |
| CLAIMS PROVISIONS | 10.0 |
| FAMILY AND MEDICAL LEAVE OF ABSENCE EXTENSION | 11.0 |
| MILITARY SERVICES LEAVE OF ABSENCE COVERAGE | 11.1 |
| PORTABILITY | 12.0 |
| GROUP TERM LIFE INSURANCE LIVING BENEFIT RIDER | 13.0 |

## SCHEDULE OF BENEFITS

**NAME OF SUBSIDIARIES, DIVISIONS OR AFFILIATES TO BE COVERED:** None

**ELIGIBLE CLASSES:** Each active, Full-time Employee, except any person employed on a temporary or seasonal basis.

**INDIVIDUAL EFFECTIVE DATE:** The day the person becomes eligible.

**INDIVIDUAL REINSTATEMENT:** 6 months

**MINIMUM PARTICIPATION REQUIREMENTS:** Percentage: 100%          Number of Insureds:  10

**AMOUNT OF INSURANCE:**

**Basic Life:** Two (2) times Earnings, rounded to the next higher $500, subject to a minimum of $5,000 and a maximum of $350,000.

The Amount of Basic Life Insurance will be reduced as follows:

(1) At age 65, to one (1) times Earnings, rounded to the next higher $500, subject to a minimum of $5,000 and a maximum of $350,000;
(2) At age 70, to one-half (1/2) times Earnings, rounded to the next higher $500, subject to a minimum of $5,000 and a maximum of $350,000; and
(3) At age 75, to $5,000.

The Life amount will be reduced by any benefit paid under the Living Benefit Rider.

**CHANGES IN AMOUNT OF INSURANCE:**  Changes in the Amount of Insurance because of changes in age, class or earnings (if applicable) are effective on the date of the change, provided the Insured must be Actively At Work on the date of the change.  If an Insured is not Actively At Work when the change should take effect, the change will take effect on the day after the Insured has been Actively At Work for one full day.

**CONTRIBUTIONS:** Persons:   Basic Insurance:  0%

# DEFINITIONS

"We," "us" and "our" means Reliance Standard Life Insurance Company.

"You," "your" and "yours" means the employer, union or other entity to which the Policy is issued and which is deemed the Policyholder.

"Eligible Person" means a person who meets the eligibility requirements of the Policy.

"Insured" means a person who meets the eligibility requirements of the Policy and is enrolled for this insurance.

"Actively at work" and "active work" means the person actually performing on a Full-time basis each and every duty pertaining to his/her job in the place where and the manner in which the job is normally performed.  This includes approved time off such as vacation, jury duty and funeral leave, but does not include time off as a result of injury or illness.

"Full-time" means working for you for a minimum of 10 hours during a person's regularly scheduled work week.

"The date he/she retires" or "retirement" means the effective date of an Insured's:

(1) retirement pension benefits under any plan of a federal, state, county or municipal retirement system, if such pension benefits include any credit for employment with you;
(2) retirement pension benefits under any plan which you sponsor, or make or have made contributions; or
(3) retirement benefits under the United States Social Security Act of 1935, as amended, or under any similar plan or act.

"Earnings", as used in the SCHEDULE OF BENEFITS section, means the Insured's annual salary received from you on the day just before the date of loss, prior to any deductions to a 401(k) or Section 125 plan.  Earnings does not include commissions, overtime pay, bonuses or any other special compensation not received as basic salary.

If hourly employees are insured, the number of hours worked during a regularly scheduled work week, not to exceed 40 hours per week, times 52 weeks, will be used to determine annual earnings.

"Total Disability", as used in the WAIVER OF PREMIUM IN EVENT OF TOTAL DISABILITY section, means an Insured's complete inability to engage in any type of work for wage or profit for which he/she is suited by education, training or experience.

## GENERAL PROVISIONS

### ENTIRE CONTRACT

The entire contract between you and us is the Policy, your application (a copy of which is attached at issue), and any endorsements and amendments.

### CHANGES

No agent has authority to change or waive any part of the Policy. To be valid, any change or waiver must be in writing. It must also be signed by one of our executive officers and attached to the Policy.

### INCONTESTABILITY

Any statement made in your application will be deemed a representation, not a warranty. We cannot contest this Policy after it has been in force for two (2) years from the date of issue, except for non-payment of premium.

Any statements made by you, any Insured, or on behalf of any Insured to persuade us to provide coverage, will be deemed a representation, not a warranty. This provision limits our use of these statements in contesting the amount of insurance for which an Insured is covered. The following rules apply to each statement:

   (1) No statement will be used in a contest unless:

      (a) it is in a written form signed by the Insured, or on behalf of the Insured; and

      (b) a copy of such written instrument is or has been furnished to the Insured, the Insured's beneficiary or legal representative.

   (2) If the statement relates to an Insured's insurability, it will not be used to contest the validity of insurance which has been in force, before the contest, for at least two years during the lifetime of the Insured.

### RECORDS MAINTAINED

You must maintain records of all Insureds. Such records must show the essential data of the insurance, including new persons, terminations, changes, etc. This information must be reported to us regularly. We reserve the right to examine the insurance records maintained at the place where they are kept. This review will only take place during normal business hours.

### CLERICAL ERROR

Clerical errors in connection with the Policy or delays in keeping records for the Policy, whether by you, us, or the Plan Administrator:

   (1) will not terminate insurance that would otherwise have been effective; and

   (2) will not continue insurance that would otherwise have ceased or should not have been in effect.

If appropriate, a fair adjustment of premium will be made to correct a clerical error.

### MISSTATEMENT OF AGE

If an Insured's age is misstated, the premium will be adjusted. If the Insured's insurance is affected by the misstated age, it will also be adjusted. The insurance will be changed to the amount the Insured is entitled to at his/her correct age.

### ASSIGNMENT

Ownership of any benefit provided under the Policy may be transferred by assignment. An irrevocable beneficiary must give written consent to assign this insurance. Written request for assignment must be made in duplicate at our Administrative Offices. Once recorded by us, an assignment will take effect on the date it was signed. We are not liable

for any action we take before the assignment is recorded.

## CONFORMITY WITH STATE LAWS

Any section of the Policy, which on its effective date, conflicts with the laws of the state in which the Policy is issued, is amended by this provision. The Policy is amended to meet the minimum requirements of those laws.

## CERTIFICATE OF INSURANCE

We will send to you an individual certificate for each Insured.  The certificate will outline the insurance coverage and to whom benefits are payable.

## POLICY TERMINATION

You may cancel the Policy at any time. The Policy will be cancelled on the date we receive your letter or, if later, the date requested in your letter.

We may cancel the Policy if:

    (1) the premium is not paid at the end of the grace period; or

    (2) the number of Insureds is less than the Minimum Participation Number on the Schedule of Benefits; or

    (3) the percentage of eligible persons insured is less than the Minimum Participation Percentage on the Schedule of Benefits.

If we cancel because of (1) above, the Policy will be cancelled at the end of the grace period.  If we cancel because of (2) or (3) above, we will give you thirty-one (31) days written notice prior to the date of cancellation.

You will still owe us any premium that is not paid up to the date the Policy is cancelled.  We will return, pro-rata, any part of the premium paid beyond the date the Policy is cancelled.

## INDIVIDUAL ELIGIBILITY, EFFECTIVE DATE AND TERMINATION

**GENERAL GROUP:** The general group will be your employees and employees of any subsidiaries, divisions or affiliates named on the Schedule of Benefits.

**ELIGIBLE CLASSES:** The eligible classes will be those persons described on the Schedule of Benefits.

**EFFECTIVE DATE OF INDIVIDUAL INSURANCE:** If you pay the entire premium, the insurance for an eligible Person will go into effect on the date stated on the Schedule of Benefits. If an eligible Person pays a part of the premium, he/she must apply in writing for the insurance to go into effect. He/she will become insured on the date stated on the Schedule of Benefits, except that the insurance will go into effect:

  (1)  on the date he/she applies, if he/she applies within thirty-one (31) days of the date he/she is first eligible; or

  (2)  on the date we approve any required proof of good health. We require proof of good health if a person applies:

     (a)  after thirty-one (31) days from the date he/she first becomes eligible; or

     (b)  after he/she terminated this insurance but he/she remained in a class eligible for this insurance.

Changes in an Insured's amount of insurance are effective as shown on the Schedule of Benefits.

If the person is not actively at work on the day his/her insurance is to go into effect, the insurance will go into effect on the day he/she returns to active work for one full day.

**TERMINATION OF INDIVIDUAL INSURANCE:** The insurance of an Insured will terminate on the first of the following to occur:

  (1)  the date the Policy terminates; or

  (2)  the date the Insured ceases to be in a class eligible for this insurance; or

  (3)  the end of the period for which premium has been paid for the Insured; or

  (4)  the date the Insured enters military service (not including Reserve or National Guard).

**CONTINUATION OF INDIVIDUAL INSURANCE:** The insurance of an Insured may be continued, by payment of premium, beyond the date the Insured ceases to be eligible for this insurance, but not longer than:

  (1)  twelve (12) months, if due to illness or injury; or

  (2)  one (1) month, if due to temporary lay-off or approved leave of absence.

**INDIVIDUAL REINSTATEMENT:** The insurance of a terminated person may be reinstated if he/she is:

  (1)  on an approved leave of absence; or

  (2)  on temporary lay-off.

The person must return to active work with you within the period of time shown on the Schedule of Benefits. He/she must also be a member of a class eligible for this insurance.

The Person will not be required to fulfill the eligibility requirements of the Policy again. The insurance will go into effect on the day he/she returns to active work. If a Person returns after having resigned or having been discharged, he/she will be required to fulfill the eligibility requirements of the Policy again.

If a Person returns after terminating insurance at his/her request or for failure to pay premium when due, proof of good health must be approved by us before he/she may be reinstated.

## CONVERSION PRIVILEGE

An Insured can use this privilege when his/her insurance is no longer in force. It has several parts. They are:

A.  If the insurance ceases due to termination of employment or membership in any of this Policy's classes, an individual Life Insurance Policy may be issued. The Insured is entitled to a policy without disability or supplemental benefits. A written application for the policy must be made by the Insured within thirty-one (31) days after he/she terminates. The first premium must also be paid within that time. The issuance of the policy is subject to the following conditions:

    (1)  The policy will, at the option of the Insured, be on any one of our forms, except for term life insurance. It will be the standard type issued by us for the age and amount applied for;

    (2)  The policy issued will be for an amount not over what the Insured had before he/she terminated;

    (3)  The premium due for the policy will be at our usual rate. This rate will be based on the amount of insurance, class of risk and the Insured's age at date of policy issue; and

    (4)  Proof of good health is not required.

B.  If the insurance ceases due to the termination or amendment of this Policy, an individual Life Insurance Policy can be issued. An Insured must have been insured for at least five (5) years under this Policy. The same rules as in A above will be used, except that the face amount will be the lesser of:

    (1)  The amount of the Insured's Group Life benefit under this Policy. This amount will be less any amount he/she is entitled to under any group life policy issued by us or another insurance company; or

    (2)  $10,000.

C.  If the insurance reduces, as may be provided in this Policy, an individual Life Insurance Policy can be issued. The same rules as in A above will be used, except that the face amount will not be greater than the amount which ceased due to the reduction.

D.  If an Insured dies during the time in which he/she is entitled to apply for an individual policy, we will pay the benefit under the Group Policy that he/she was entitled to convert. This will be done whether or not the Insured applied for the individual policy.

E.  Any policy issued with respect to A, B or C above will be put in force at the end of the thirty-one (31) day period in which application must be made.

## PREMIUMS

**PREMIUM PAYMENT:** All premiums are to be paid by you to us, or to an authorized agent, on or before the due date. The premium due dates are stated on the Policy face page.

**PREMIUM RATE:** The premium due will be the rate per $1,000 of benefit multiplied by the entire amount of benefit volume then in force. We will furnish to you the premium rate on the Policy effective date and when it is changed. We have the right to change the premium rate:

  (1)  on any premium due date after the Policy is in force for 36 months; or

  (2)  when the extent of coverage is changed by amendment.

We will not change the premium rate due to (1) above more than once in any twelve (12) month period. We will tell you in writing at least thirty-one (31) days before the date of a change due to (1) above.

**GRACE PERIOD:** You may pay the premium up to 31 days after the date it is due. The Policy stays in force during this time. If the premium is not paid during the grace period, the Policy will be cancelled at the end of the grace period. You will still owe us the premium up to the date the Policy is cancelled.

## BENEFICIARY AND FACILITY OF PAYMENT

**BENEFICIARY:** The beneficiary will be as named in writing by the Insured to receive benefits at the Insured's death. This beneficiary designation must be on file with us or the Plan Administrator and will be effective on the date the Insured signs it. Any payment made by us before receiving the designation shall fully discharge us to the extent of that payment.

If the Insured names more than one beneficiary to share the benefit, he/she must state the percentage of the benefit that is to be paid to each beneficiary. Otherwise, they will share the benefit equally.

The beneficiary's consent is not needed if the Insured wishes to change the designation. His/her consent is also not needed to make any changes in this Policy.

If the beneficiary dies at the same time as the Insured, or within fifteen (15) days after his/her death but before we receive written proof of the Insured's death, payment will be made as if the Insured survived the beneficiary, unless noted otherwise.

If the Insured has not named a beneficiary, or the named beneficiary is not surviving at the Insured's death, any benefits due shall be paid to the first of the following classes to survive the Insured:

    (1) the Insured's legal spouse;
    (2) the Insured's surviving children (including legally adopted children), in equal shares;
    (3) the Insured's surviving parents, in equal shares;
    (4) the Insured's surviving siblings, in equal shares; or, if none of the above,
    (5) the Insured's estate.

We will not be liable for any payment we have made in good faith.

**FACILITY OF PAYMENT:** If a beneficiary, in our opinion, cannot give a valid release (and no guardian has been appointed), we may pay the benefit to the person who has custody or is the main support of the beneficiary. Payment to a minor shall not exceed $1,000.

If the Insured has not named a beneficiary, or the named beneficiary is not surviving at the Insured's death, we may pay up to $2,500 of the benefit to the person(s) who, in our opinion, have incurred expenses in connection with the Insured's last illness, death or burial.

The balance of the benefit, if any, will be held by us, until an individual or representative:

    (1) is validly named; or

    (2) is appointed to receive the proceeds; and

    (3) can give valid release to us.

The benefit will be held with interest at a rate set by us.

We will not be liable for any payment we have made in good faith.

## SETTLEMENT OPTIONS

The Insured may elect a different way in which payment of the Amount of Insurance can be made. He/she must provide a written request to us, for our approval, at our Administrative Office. If the option covers less than the full amount due, we must be advised of what part is to be under an option. Amounts under $2,000 or option payments of less than $20.00 each are not eligible.

If no instructions for a settlement option are in effect at the death of the Insured, the beneficiary may make the election, with our consent.

### OPTION A – FIXED TIME PAYMENT OPTION

Equal monthly payments will be made for any period chosen, up to thirty (30) years. The amount of each payment depends on the amount applied, the period selected and the payment rates we are using when the first payment is due. The rate of any monthly payment will not be less than shown in the table below. We reserve the right to change it. This change will apply only to requests for settlement elected after this date.

#### Option A Table
#### Minimum Monthly Payment Rates for each $1,000 Applied

| Years | Monthly Payment | Years | Monthly Payment | Years | Monthly Payment | Years | Monthly Payment | Years | Monthly Payment |
|-------|-----------------|-------|-----------------|-------|-----------------|-------|-----------------|-------|-----------------|
| 1 | $84.47 | 7 | $13.16 | 13 | $7.71 | 19 | $5.73 | 25 | $4.71 |
| 2 | 42.86 | 8 | 11.68 | 14 | 7.26 | 20 | 5.51 | 26 | 4.59 |
| 3 | 28.99 | 9 | 10.53 | 15 | 6.87 | 21 | 5.32 | 27 | 4.47 |
| 4 | 22.06 | 10 | 9.61 | 16 | 6.53 | 22 | 5.15 | 28 | 4.37 |
| 5 | 17.91 | 11 | 8.86 | 17 | 6.23 | 23 | 4.99 | 29 | 4.27 |
| 6 | 15.14 | 12 | 8.24 | 18 | 5.96 | 24 | 4.84 | 30 | 4.18 |

### OPTION B – FIXED AMOUNT PAYMENT OPTION

Each payment will be for an agreed fixed amount. The amount of each payment may not be less than $10.00 for each $1,000 applied. Interest will be credited each month on the unpaid balance and added to it. This interest will be at a rate set by us, but not less than the equivalent of 3% per year. Payments continue until the amount we hold runs out. The last payment will be for the balance only.

### OPTION C – INTEREST PAYMENT OPTION

We will hold any amount applied under this section. Interest on the unpaid balance will be paid each month at a rate set by us. This rate will not be less than the equivalent of 3% per year.

If a beneficiary dies while receiving payments under one of these options and there is no contingent beneficiary, the balance will be paid in one sum to the proper representative of the beneficiary's estate, unless otherwise agreed to in the instructions for settlement.

Requests for settlement options other than the three (3) set out above may be made. A mutual agreement must be reached between the individual entitled to elect and us.

## WAIVER OF PREMIUM IN EVENT OF TOTAL DISABILITY

We will extend the Amount of Insurance during a period of Total Disability for one (1) year if:

    (1) the Insured becomes totally disabled prior to age 70;
    (2) the Total Disability begins while he/she is insured;
    (3) the Total Disability begins while this Policy is in force;
    (4) the Total Disability lasts for at least 6 months;
    (5) the premium continues to be paid; and
    (6) we receive proof of Total Disability within one (1) year from the date it began.

After proof of Total Disability is approved by us, neither you or the Insured is required to pay premiums. Also, any premiums paid from the start of the Total Disability will be returned.

We will ask the Insured to submit annual proof of continued Total Disability. The Amount of Insurance may then be extended for additional one (1) year periods. The Insured may be required to be examined by a Physician approved by us as part of the proof. We will not require the Insured to be examined more than once a year after the insurance has been extended two (2) full years.

The Amount of Insurance extended will be limited to the amount of basic group life coverage on the life of the Insured that was in force at the time that Total Disability began excluding any additional benefits. This amount will not increase. This amount will reduce or cease at any time it would reduce or cease if the Insured had not been totally disabled. If the Insured dies, we will be liable under this extension only if written proof of death is received by us.

The Amount of Insurance extended for an Insured will cease on the earliest of:

    (1) the date he/she no longer meets the definition of Total Disability; or
    (2) the date he/she refuses to be examined; or
    (3) the date he/she fails to furnish the required proof of Total Disability.

The Insured may use the conversion privilege when this extension ceases. Please refer to the Conversion Privilege section for rules. An Insured is not entitled to conversion if he/she returns to work and is again eligible for the insurance under this Policy. If the Insured uses the conversion privilege, benefits will not be payable under the Waiver of Premium in Event of Total Disability provision unless the converted policy is surrendered to us.

If the Insured qualifies for benefits in accordance with the Waiver of Premium in Event of Total Disability provision because he/she has been diagnosed by a Physician as totally disabled due to the following Condition(s) or Procedure(s), as later defined;

    (1) Life Threatening Cancer; or
    (2) Heart Attack (Myocardial Infarction); or
    (3) Kidney (Renal) Failure; or
    (4) Receipt of Major Organ Transplant; or
    (5) Stroke,

we will pay to the Insured an additional, one time, lump sum benefit in an amount equal to 10% of the death benefit under the basic life portion of this Policy up to a maximum of $100,000.

This lump sum benefit applies only to the first Condition or Procedure to occur among those hereinafter defined which qualifies the Insured for waiver of premium benefits. No further lump sum benefits will be payable under this provision during the same or any subsequent periods of Total Disability, or as a result of the occurrence of any other Condition or Procedure.

Definition(s):

"Condition(s) or Procedure(s)" mean only the following:

"Life Threatening Cancer" means a malignant neoplasm (including hematologic malignancy), as diagnosed by a Physician who is a board certified oncologist, and which is characterized by the uncontrolled growth and spread of malignant cells

and the invasion of tissue, and which is not specifically excluded. The following types of cancer are not considered a Life Threatening Cancer: (1) early prostate cancer diagnosed as T2c or less according to the TNM scale; (2) colorectal cancer diagnosed as T2, N1, M0 or less according to the TNM scale; (3) breast cancer diagnosed as T3, N2, M0 or less according to the TNM scale; (4) First Carcinoma in Situ; (5) pre-malignant lesions (such as intraepithelial neoplasia); (6) brain glioma; (7) benign tumors or polyps; (8) tumors in the presence of the Human Immunodeficiency Virus (HIV) or Acquired Immune Deficiency Syndrome (AIDS); or (9) any skin cancer other than invasive malignant melanoma in the dermis or deeper, or skin malignancies that have become Life Threatening Cancers.

"First Carcinoma in Situ" means the first diagnosis of cancer in which the tumor cells still lie within the tissue of the site of origin without having invaded neighboring tissue. First Carcinoma in Situ must be diagnosed pursuant to a pathological diagnosis or clinical diagnosis.

"Heart Attack (Myocardial Infarction)" means the death of a segment of the heart muscle as a result of a blockage of one or more coronary arteries. In order to be covered under this provision, the diagnosis by a Physician of Heart Attack (Myocardial Infarction) must be based on:

(1) new electrocardiographic changes consistent with and supporting a diagnosis of Heart Attack (Myocardial Infarction); and
(2) a concurrent diagnostic elevation of cardiac enzymes; and
(3) therapeutic and functional classifications, 3 or above and C or above respectively, according to the New York Heart Association.

"Kidney (Renal) Failure" means the chronic irreversible failure of both of the kidneys (end stage renal disease), which requires treatment with dialysis on a regular basis. Kidney Failure is covered under this provision only if the diagnosis has been made by a Physician who is a board certified nephrologist.

"Physician" means a duly licensed practitioner who is recognized by the law of the jurisdiction in which treatment is received as qualified to treat the type of condition for which claim is made. The Physician may not be the Insured or a member of his/her immediate family and must be approved by us.

"Receipt of Major Organ Transplant" means that the Insured has been the recipient of a major organ transplant and that there is clinical evidence of an Insured's major organ(s) failure which, according to the diagnosis of a Physician, required the failing organ(s) or tissue of the Insured to be replaced with organ(s) or tissue from a suitable donor under generally accepted medical procedures. Organs or tissues covered by this definition are limited to liver, kidney, lung, entire heart, pancreas, or pancreas-kidney.

"Stroke" means a cerebrovascular accident or infarction (death) of brain tissue, as diagnosed by a Physician, which is caused by hemorrhage, embolism, or thrombosis producing measurable, neurological deficit persisting for at least one hundred eighty (180) days following the occurrence of the Stroke. Stroke does not include Transient Ischemic Attack (TIA) or other cerebral vascular events.

Receipt of this additional lump sum payment may be taxable. The Insured should seek assistance from his/her own personal tax advisor.

## CLAIMS PROVISIONS

**NOTICE OF CLAIM:** Written notice must be given to us within thirty-one (31) days after the Loss occurs, or as soon as reasonably possible. The notice should be sent to us at our Administrative Offices or to our authorized agent. The notice should include the Insured's name, the Policy Number and your name.

**CLAIM FORMS:** When we receive written notice of a claim, we will send claim forms to the claimant within fifteen (15) days. If we do not, the claimant will satisfy the requirements of written proof of loss by sending us written proof as shown below. The proof must describe the occurrence, extent and nature of the loss.

**PROOF OF LOSS:** For any covered Loss, written proof must be sent to us within ninety (90) days. If it is not reasonably possible to give proof within ninety (90) days, the claim is not affected if the proof is sent as soon as reasonably possible. In any event, proof must be given within 1 year, unless the claimant is legally incapable of doing so.

**PAYMENT OF CLAIMS:** Payment will be made as soon as proper proof is received. All benefits will be paid to the Insured if living. Any benefits unpaid at the time of death, or due to death, will be paid to the beneficiary.

Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

**PHYSICAL EXAMINATION:** At our own expense, we will have the right to have an Insured examined as reasonably necessary when a claim is pending. We can have an autopsy made unless prohibited by law.

**LEGAL ACTION:** No legal action may be brought against us to recover on Policy within sixty (60) days after written proof of loss has been given as required by Policy. No action may be brought after three (3) years (Kansas, five (5) years; South Carolina, six (6) years) from the time written proof of loss is required to be submitted.

## FAMILY AND MEDICAL LEAVE OF ABSENCE EXTENSION

We will allow the Insured's coverage to continue for up to twelve (12) weeks in a twelve (12) month period, if the Insured is eligible for, and you have approved, a Family and Medical Leave of Absence under the terms of the Family and Medical Leave Act of 1993 for any of the following reasons:

    (1)  To provide care after the birth of a son or daughter; or
    (2)  To provide care for a son or daughter upon legal adoption; or
    (3)  To provide care after the placement of a foster child in the Insured's home; or
    (4)  To provide care to a spouse, son, daughter, or parent due to serious illness; or
    (5)  To take care of his/her own serious health condition as explained below.

If the Insured, due to his/her own serious health condition, meets the definition of Total Disability in this Policy, he/she will be considered Totally Disabled and eligible for Waiver of Premium benefits according to the Waiver of Premium in Event of Total Disability provision. If the Insured, due to his/her own serious health condition, is on a Family and Medical Leave of Absence, but not eligible for Waiver of Premium benefits under this Policy, insurance coverage will be continued under this extension.

The Insured will not qualify for the Family and Medical Leave of Absence Extension unless we have received proof from you, in a form satisfactory to us, that the Insured has been granted a leave under the terms of the Family and Medical Leave Act of 1993. Such proof: (1) must outline the terms of the Insured's leave; and (2) give the date the leave began; and (3) the date it is expected to end; and (4) must be received by us within thirty-one (31) days after a claim for benefits has been filed with us.

If you grant the Insured a Family and Medical Leave of Absence, the following applies to the Insured who has been granted the leave:

    (1)  While the Insured is on an approved Family and Medical Leave of Absence, the required premium must be paid according to the terms specified in this Policy to keep the insurance in force.

    (2)  Coverage will terminate for any Insured if the Insured does not return to work as scheduled according to the terms of his/her agreement with you; however, the Insured is eligible to convert his/her coverage under the Conversion Privilege. In no case will coverage be extended under this benefit beyond twelve (12) weeks in a twelve (12) month period. Insurance will not be terminated for an Insured who becomes Totally Disabled during the period of the leave and who is eligible for Waiver of Premium benefits, if any, according to the terms of this Policy.

    (3)  This extension is not available if the Insured converts his/her coverage under the Conversion Privilege.

    (4)  While the Insured is on an approved Family and Medical Leave of Absence, he/she will be considered Actively at Work in all instances unless such leave is due to his/her own illness, injury, or disability. Changes such as revisions to coverage because of age, class or salary changes will apply during the leave except that increases in amount of insurance, whether automatic or subject to election, are not effective for an Insured who is not Actively at Work until such time as he/she returns to Active Work for one full day.

All other terms and conditions of this Policy will remain in force while an Insured is on an approved Family and Medical Leave of Absence.

## MILITARY SERVICES LEAVE OF ABSENCE COVERAGE

We will allow the Insured's coverage to continue for up to twelve (12) weeks in a twelve (12) month period, if the Insured enters the military service of the United States. While the Insured is on a Military Services Leave of Absence, the required premium must be paid according to the terms specified in this Policy to keep the insurance in force. Changes such as revisions to coverage because of age, class or salary changes will apply during the leave except that increases in amount of insurance, whether automatic or subject to election, are not effective for such an Insured until he/she has returned to work from Military Services Leave of Absence for one full day. All other terms and conditions of this Policy will remain in force during this continuation period. The Insured's continued coverage will cease on the earliest of the following dates:

    (1) the date this Policy terminates; or
    (2) the date ending the last period for which any required premium was paid; or
    (3) twelve (12) weeks from the date the Insured's continued coverage began.

This Policy, however, does not cover any loss which occurs while on active duty in the military service if such loss is caused by or arises out of such military service, including but not limited to war or act of war (whether declared or undeclared).

## PORTABILITY

An Insured may continue insurance coverage under this Policy if coverage would otherwise terminate because he/she ceases to be an Eligible Person, for reasons other than the termination of this Policy, or the Insured's retirement, provided he/she:

(1) notifies us in writing within thirty-one (31) days from the date he/she ceases to be eligible; and
(2) remits the necessary premiums when due; and
(3) is not considered Totally Disabled under the Waiver of Premium in Event of Total Disability provision, if applicable; and
(4) has been covered for twelve (12) months under this Policy and/or the prior group life insurance policy.

Such coverage may be continued for a period of 2 years beginning on the date he/she is no longer an Eligible Person.

The amount of coverage available under the Portability provision will be the current amount of coverage the Insured is insured for under this Policy on the last day he/she was Actively at Work. However, the amount of coverage will never be more than:

(1) the highest amount of life insurance available to Eligible Persons; or
(2) a total of $500,000 from all RSL group life and accidental death and dismemberment insurance combined, whichever is less.

The premium charged to continue coverage will be based on the prevailing rate charged to Insureds who choose to continue coverage under the Portability provision. Such premium will be billed directly to the Insured on a quarterly, semi-annual or annual basis.

If an Insured's coverage under this Policy includes Accidental Death and Dismemberment, then such benefits may be continued under this Policy.

Insurance coverage continued under this provision for an Insured will terminate on the first of the following to occur:

(1) the date this Policy terminates; or
(2) the end of the period for which premium has been paid; or
(3) the date the Insured is covered under another group term life insurance policy; or
(4) at the end of the 2 year period; or
(5) at any time coverage would normally terminate according to the terms of this Policy had the Insured continued to be an Eligible Person.

In addition, coverage will reduce at any time it would normally reduce according to the terms of this Policy had the Insured continued to be an Eligible Person.

If insurance coverage terminates due to (1) or (4) above, it may be converted to an individual life insurance policy. The conversion will be subject to the terms and conditions set forth under the Conversion Privilege.

## GROUP TERM LIFE INSURANCE LIVING BENEFIT RIDER

**THIS RIDER ADDS AN ACCELERATED BENEFIT PROVISION. RECEIPT OF THIS ACCELERATED BENEFIT WILL REDUCE THE DEATH BENEFIT AND MAY BE TAXABLE. INSUREDS SHOULD SEEK ASSISTANCE FROM THEIR PERSONAL TAX ADVISOR.**

Attached to Group Policy Number: GL 140621
Issued to Group Policyholder: Christina School District

This Rider is attached to and made a part of the Policy indicated above. The Policy is hereby amended, in consideration of the application for this coverage, by the addition of the following benefit. In this Rider, Reliance Standard Life Insurance Company will be referred to as "we", "us", "our".

**DEFINITIONS:** This section gives the meaning of terms used in this Rider. The Definitions of the Policy and Certificate also apply unless they conflict with Definitions given here.

"Certified" or "Certification" refers to a written statement, made by a Physician on a form provided by us, as to the Insured's Terminal Illness.

"Certificate" means the document, issued to each Insured, which explains the terms of his coverage under the Group Life Insurance Policy.

"Death Benefit" means the insurance amount payable under the Policy at the death of the Insured. It does not include any amount that is only payable in the event of Accidental Death.

"Insured" means only a primary Insured. Dependents are not eligible for coverage under this Living Benefit Rider.

"Physician" means a duly licensed practitioner, acting within the scope of his license, who is recognized by the law of the state in which diagnosis is received. The Physician may not be the Insured or a member of his immediate family.

"Policy" means the Group Life Insurance Policy issued to the Group Policyholder under which the Insured is covered.

"Terminally Ill" or "Terminal Illness" refers to an Insured's illness or physical condition that is Certified by a Physician to reasonably be expected to result in death in less than 12 months.

"Written Request" means a request made, in writing, by the Insured to us.

All pronouns include either gender unless the context indicates otherwise.

**DESCRIPTION OF COVERAGE:** This benefit is payable to the Insured if, after having been covered under this Rider for at least 60 days, an Insured is Certified as Terminally Ill. In order for this benefit to be paid:

   (1) the Insured must make a Written Request; and

   (2) we must receive from any assignee or irrevocable beneficiary their signed acknowledgment and agreement to payment of this benefit.

We may, at our option, confirm the terminal diagnosis with a second medical exam performed at our own expense.

**AMOUNT OF THE LIVING BENEFIT:** The Living Benefit will be an amount equal to 75% of the Death Benefit applicable to the Insured under the Policy on the date of the Certification of Terminal Illness, subject to a maximum benefit of $500,000. This benefit may be paid as a single lump sum. The Living Benefit is payable one time only for any Insured under this Rider.

**EFFECT OF BENEFIT:** If an Insured becomes eligible for, and elects to receive this benefit, it will have the following effects:

   (1) The Death Benefit payable for such Insured will be reduced by the amount equal to the Living Benefit paid to such Insured. The amount of the Living Benefit plus the corresponding Death Benefit will not exceed the amount that

would have been paid as the Death Benefit in the absence of this Rider.

(2) Any amount of insurance that would otherwise be continued under a Waiver of Premium provision will be reduced proportionately, as will the maximum Face Amount available under the Conversion Privilege.

**TERMINATION OF AN INDIVIDUAL'S COVERAGE UNDER THIS RIDER:** The coverage of any Insured under this Rider will terminate on the first of the following:

(1) the date his coverage under the Policy terminates;

(2) the date of payment of the Living Benefit for his Terminal Illness; or

(3) the date he attains age 75.

**ADDITIONAL PROVISIONS:** This Rider takes effect on the Effective Date shown. It will terminate on the date the Group Policy terminates. It is subject to all the terms of the Group Policy not inconsistent herein.

In witness whereof, we have caused this Rider to be signed by our Secretary.

Secretary

# RELIANCE STANDARD

## Life Insurance Company

Home Office: Chicago, Illinois • Administrative Office: Philadelphia, Pennsylvania

**POLICYHOLDER:** Christina School District

**GROUP POLICY NUMBER:** VAR 203605

**POLICY EFFECTIVE DATE:** July 1, 2006

**PREMIUM DUE DATES:** The first premium is due on the Policy Effective Date. After that premiums are due monthly, in advance, on the first day of each month.

This Policy is delivered in Delaware and is governed by its laws.

This insurance Policy is a contract between you, the Policyholder named above, and us, Reliance Standard Life Insurance Company. We agree to provide insurance to you in exchange for the payment of premium and the signed Application. This Policy insures against certain accidental losses as described herein. It will cover the Eligible Persons for whom the proper premium has been paid for the amount of insurance shown on the Schedule of Benefits. Coverage is subject to the terms and conditions of this Policy.

The Policy Effective Date is shown above. Insurance starts and ends at 12:01 A.M. local time, at your address. It stays in force in accordance with the provisions set forth in this Policy. The POLICY TERMINATION section of the GENERAL PROVISIONS explains when this Policy can be ended.

This Policy is signed by our President and Secretary.

Secretary

President

Countersigned by_____

**GROUP ACCIDENT POLICY**

**NON-PARTICIPATING**

LRS-8604-001-0790

*1*

## APPLICATION FOR GROUP ACCIDENT POLICY

### RELIANCE STANDARD LIFE INSURANCE COMPANY
**Philadelphia, Pennsylvania**

**GROUP POLICY NUMBER:** VAR 203605          **POLICY EFFECTIVE DATE:** July 1, 2006

**POLICY DELIVERED IN:** Delaware          **ANNIVERSARY DATE:** July 1st in each year

**APPLICATION IS MADE TO US BY:** Christina School District

**MONTHLY PREMIUM PER $1,000 OF PRINCIPAL SUM:**

Insured Person: $0.01

This Application is completed in duplicate, one copy to be attached to your Policy and the other returned to us.

It is agreed that this Application takes the place of any previous application for your Policy.

Signed at:_____  This:_____ Day of:_____

Policyholder: _____  Agent:_____

Federal Employer Identification Number: 51-6000279

By: _____          _____
    (Signature)                                    (Licensed Resident Agent)

_____
    (Title)

Please sign and return.



*BC1COAPVAR    20360507/01/2006*RSL
*BC2COAPChristina School District

**APPLICATION FOR GROUP ACCIDENT POLICY**

**RELIANCE STANDARD LIFE INSURANCE COMPANY**
**Philadelphia, Pennsylvania**

**GROUP POLICY NUMBER:** VAR 203605          **POLICY EFFECTIVE DATE:** July 1, 2006

**POLICY DELIVERED IN:** Delaware          **ANNIVERSARY DATE:** July 1st in each year

**APPLICATION IS MADE TO US BY:** Christina School District

**MONTHLY PREMIUM PER $1,000 OF PRINCIPAL SUM:**

  Insured Person: $0.01

This Application is completed in duplicate, one copy to be attached to your Policy and the other returned to us.

It is agreed that this Application takes the place of any previous application for your Policy.

Signed at:_____ This:_____ Day of:_____

Policyholder: _____ Agent:_____

Federal Employer Identification Number: 51-6000279

By: _____          _____
              (Signature)                                              (Licensed Resident Agent)

_____
              (Title)

# TABLE OF CONTENTS

| | PAGE |
|---|---|
| SCHEDULE OF BENEFITS | 1.0 |
| DEFINITIONS | 2.0 |
| GENERAL PROVISIONS | 3.0 |
| INDIVIDUAL ELIGIBILITY, EFFECTIVE DATE AND TERMINATION | 4.0 |
| CONVERSION PRIVILEGE | 5.0 |
| PREMIUMS | 6.0 |
| BENEFICIARY AND FACILITY OF PAYMENT | 7.0 |
| CLAIMS PROVISIONS | 8.0 |
| SETTLEMENT OPTIONS | 9.0 |
| ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT | 10.0 |
| COVERAGE FOR MEMBERS OF RESERVE-NATIONAL GUARD | 11.0 |
| COVERAGE OF EXPOSURE AND DISAPPEARANCE | 12.0 |
| SEAT BELT AND AIR BAG BENEFIT | 13.0 |
| FAMILY AND MEDICAL LEAVE OF ABSENCE EXTENSION | 14.0 |
| MILITARY SERVICES LEAVE OF ABSENCE COVERAGE | 14.1 |
| EXCLUSIONS | 15.0 |

6

LRS-8604-003-0790

### SCHEDULE OF BENEFITS

**NAME OF SUBSIDIARIES, DIVISIONS OR AFFILIATES TO BE COVERED:** NONE

**ELIGIBILITY:**   Each active, Full-time Employee, except any person employed on a temporary or seasonal basis.

**INDIVIDUAL EFFECTIVE DATE:** The day the person becomes eligible.

**INDIVIDUAL REINSTATEMENT:** 6 months

**CONTRIBUTIONS:**      Each Eligible Person: 0%

**AMOUNT OF INSURANCE:**                    **PRINCIPAL SUM:**

INSURED PERSONS:

Two (2) times Earnings, rounded to the next higher $500, subject to a minimum of $5,000 and a maximum of $350,000.

The Amount of Principal Sum will be reduced as follows:

(1) At age 65, to one (1) times Earnings, rounded to the next higher $500, subject to a minimum of $5,000 and a maximum of $350,000;
(2) At age 70, to one-half (1/2) times Earnings, rounded to the next higher $500, subject to a minimum of $5,000 and a maximum of $350,000; and
(3) At age 75, to $5,000.

**CHANGES IN AMOUNT OF INSURANCE**: Changes in the Amount of Insurance because of a change in age, class or Earnings (if applicable) are effective on the date of the change, provided that if an Insured Person is not Actively at Work on the date an increase would otherwise take effect for them, such increase will not take effect until the date the Insured Person returns to active work.

## DEFINITIONS

"Actively at Work" and "Active Work" means the Insured Person is actually performing on a Full-time basis each and every duty pertaining to his job in the place where and the manner in which the job is normally performed. This includes approved time off for vacation, jury duty and funeral leave, but does not include time off as a result of Injury or illness.

"Earnings" means the basic annual wages received from you on the day just before the date of the Injury, prior to any deductions to a 401(k) and Section 125 plan. Earnings do not include commissions, overtime pay, bonuses or any other special compensation not received as basic wages.

If hourly employees are insured, the number of hours worked during a regularly scheduled work week, not to exceed 40 hours per week, times 52 weeks, will be used to determine annual Earnings.

"Eligible Person" means a person who meets the Eligibility requirements of this Policy.

"Full-time" means working for you for a minimum of 10 hours during a person's regularly scheduled work week.

"Insured Person" means a person who meets the Eligibility requirements of this Policy and is enrolled for this insurance, and whose insurance under this Policy is in effect.

"Insured" means an Insured Person unless the context indicates otherwise.

"Injury" means accidental bodily injury to an Insured which is caused directly and independently of all other causes by accidental means and which occurs while the Insured's coverage under this Policy is in force.

"We", "us", and "our" means Reliance Standard Life Insurance Company.

"You", "your", and "yours" means the Policyholder.

## GENERAL PROVISIONS

**ENTIRE CONTRACT:** The entire contract between you and us is this Policy, your signed Application for this Policy (a copy of which is attached at issue), and any endorsements or amendments.

**CHANGES:** No agent has authority to change or waive any part of this Policy. To be valid, any change or waiver must be in writing, signed by a President, Vice President or Secretary and attached to this Policy.

**INCONTESTABILITY:** Any statement made in your application will be deemed a representation, not a warranty. We cannot contest this Policy after it has been in force for two (2) years from the date of issue, except for non-payment of premium.

Any statements made by you, any Insured Person, or on behalf of any Insured to persuade us to provide coverage, will be deemed a representation, not a warranty. This provision limits our use of these statements in contesting the amount of insurance for which an Insured Person is covered. The following rules apply to each statement:

    (1) No statement will be used in a contest unless:

        (a) it is in a written form signed by the Insured Person, or on behalf of the Insured Person; and

        (b) a copy of such written instrument is or has been furnished to the Insured Person, the Insured Person's beneficiary or legal representative.

    (2) If the statement relates to an Insured Person's insurability, it will not be used to contest the validity of insurance which has been in force, before the contest, for at least two years during the lifetime of the Insured Person.

**ASSIGNMENT:** Ownership of any benefit provided under this Policy may be transferred by assignment. An irrevocable beneficiary must give written consent to assign this insurance. Written request for assignment must be made in duplicate at our Administrative Offices. Once recorded by us, an assignment will take effect on the date it was signed. We are not liable for any action we take before the assignment is recorded.

**RECORDS MAINTAINED:** You or an authorized Plan Administrator must maintain records of all Insureds. Such records must show the essential data of the insurance, including new persons, terminations, changes, etc. This information must be reported to us regularly. We reserve the right to examine the insurance records maintained at the place where they are kept. This review will only take place during normal business hours.

**CLERICAL ERROR:** Clerical errors in connection with the Policy or delays in keeping records for the Policy, whether by you, us, or the Plan Administrator:

    (a) will not terminate insurance that would otherwise have been effective; and

    (b) will not continue insurance that would otherwise have ceased or should not have been in effect.

If appropriate, a fair adjustment of premium will be made to correct a clerical error.

**MISSTATEMENT OF AGE:** If an Insured's age has been misstated, benefits will be those that apply to his correct age.

**NOT IN LIEU OF WORKER'S COMPENSATION:** This Policy is not a Worker's Compensation Policy. It does not provide Worker's Compensation benefits.

**CONFORMITY WITH STATE LAWS:** Any provision in this Policy which, on its Effective Date, is in conflict with the laws in the state where it is issued or in a state that otherwise has jurisdiction over such provision, is amended to conform with the minimum requirements of such laws of that state.

**CERTIFICATE OF INSURANCE:** We will provide a certificate of insurance for each Insured Person. The certificate will set forth the terms of coverage and to whom benefits are payable.

**POLICY TERMINATION:** This Policy may be terminated by you or us on any premium due date, after this Policy has been in force 12 months. Written notice of termination must be mailed to the other party at least 31 days prior to the

effective date of such termination.  We will mail the notice to your last address shown on our records.

**PRONOUNS:**  All pronouns include either gender unless the context indicates otherwise.

LRS-8604-007-0694

## INDIVIDUAL ELIGIBILITY, EFFECTIVE DATE AND TERMINATION

**ELIGIBLE CLASSES:** The eligible classes will be those persons described on the Schedule of Benefits.

**EFFECTIVE DATE OF INDIVIDUAL INSURANCE:** The insurance of an Eligible Person will go into effect on the Individual Effective Date as shown on the Schedule of Benefits.

If an Eligible Person is not Actively At Work on the day his insurance is to go into effect, his insurance will take effect on the day he returns to Active Work for one full day.

Changes in an Insured Person's amount of insurance are effective as shown on the Schedule of Benefits.

**TERMINATION OF INDIVIDUAL INSURANCE:** An Insured Person's coverage will terminate on the first of the following to occur:

    (1) the date this Policy terminates; or

    (2) the date the Insured Person ceases to be in a class eligible for this insurance; or

    (3) the end of the period for which premium has been paid for the Insured Person's coverage.

Any loss which occurs prior to the termination of this insurance coverage will not be affected.

**CONTINUATION OF INDIVIDUAL INSURANCE:** An Insured Person's coverage may be continued, by payment of premium, beyond the date the Insured Person ceases to be eligible for this insurance, but not longer than:

    (1) 12 months, if he ceases to be eligible due to illness or Injury; or

    (2) 1 month, if he ceases to be eligible due to temporary lay-off or approved leave of absence.

**INDIVIDUAL REINSTATEMENT:** If an Insured Person's coverage is terminated, it may be reinstated if he is:

    (1) on an approved leave of absence; or

    (2) on temporary lay-off.

Such person must return to Active Work with you within the period of time shown on the Schedule of Benefits (INDIVIDUAL REINSTATEMENT). He must also be a member of a class eligible for this insurance.

Unless a person is returning after having resigned or having been discharged, he will not be required to fulfill the eligibility requirements of this Policy again. The insurance will go into effect on the date he returns to Active Work.

## CONVERSION PRIVILEGE

An Insured Person can use this privilege when his Accidental Death and Dismemberment insurance coverage is no longer in force for any reason, except termination of this Policy. The Insured must make written application for the converted policy within 31 days after coverage ends. The first premium must also be paid within that time. The issuance of the converted policy is subject to the following conditions:

(1) the converted policy will take effect on the date of the termination of this insurance, or on the date of the application for the converted policy, whichever is later;

(2) proof of health will not be required; and

(3) the premium will be applicable to the class of risk to which the Insured belongs, at his attained age, and to the form and amount of insurance provided.

The converted policy's Principal Sum will be the lower of:

(1) the Amount of Principal Sum applicable to the Insured under this Policy; or

(2) $250,000.

The converted policy may provide that it will be renewable on any anniversary with our consent, subject to a maximum age limit.

The converted policy may exclude any condition or hazard which applied to the Insured at the time this coverage terminated. Benefits will not be paid under the converted policy for a claim originating under this Policy.

The Insured may convert to any individual Accidental Death and Dismemberment policy we offer in the state where he lives.

## PREMIUMS

**PREMIUM PAYMENT:** All premiums are to be paid by you to us, or to an authorized agent, on or before the due date. The premium due dates are stated on the face page of this Policy.

**PREMIUM RATE:** The initial premium rate is shown on the application for this Policy.

The premium for this insurance is based on the coverage requested. We reserve the right to adjust the premium rate on any premium due date:

    (1) after coverage has been in force for 36 months; or

    (2) if the coverage is changed by amendment.

We will not change the premium rate more than once in any 12 month period unless the coverage is changed. We will notify you in writing at least 31 days before a premium change is made due to (1) above.

**GRACE PERIOD:** You may pay the premium up to 31 days after the date it is due. This Policy stays in force during this time. If the premium is not paid during the grace period, this Policy will be cancelled at the end of the grace period. You will still owe us the premium up to the date this Policy is cancelled.

## BENEFICIARY AND FACILITY OF PAYMENT

**BENEFICIARY:** If the Insured Person dies, any death benefit payable and any other accrued benefits will be paid to the beneficiary named in records maintained by you, or if none, to the beneficiary named to receive the proceeds of the basic Group Life policy issued to you. Benefits will not be paid to you or an officer of your firm. A beneficiary designation will be effective as of the date the Insured Person signed it. Any payment made by us before receiving the designation shall fully discharge us to the extent of that payment.

The Insured Person can change the beneficiary by telling us in writing on our form. The consent of a revocable beneficiary is not needed. The change will take effect only when it is received and approved by us or an authorized Plan Administrator. We cannot attest to the validity of such a change.

If an Insured's beneficiary dies at the same time as the Insured, or within 15 days after his death but before we receive written proof of the Insured's death, payment will be made as if the Insured survived the beneficiary, unless noted otherwise in another provision of this Policy.

If the Insured Person has not named a beneficiary, or an Insured's named beneficiary is not surviving at the Insured's death, any benefits due shall be paid to the first of the following classes to survive the Insured:

    (1) the Insured's legal spouse;

    (2) the Insured's surviving children (including legally adopted children), in equal shares;

    (3) the Insured's surviving parents, in equal shares;

    (4) the Insured's surviving siblings, in equal shares; or, if none of the above,

    (5) the Insured's estate.

**FACILITY OF PAYMENT:** If a beneficiary, in our opinion, cannot give a valid release (and no guardian has been appointed), we may pay the benefit to the person who has custody or is the main support of the beneficiary. Payment to a minor shall not exceed $1,000.

If the Insured has not named a beneficiary or the beneficiary is not surviving at the Insured's death, we may pay up to $2,500 of the benefit to the person(s) who, in our opinion, has incurred expenses in connection with the Insured's last illness, death or burial. Payment may also be made to the executor or administrator of the Insured's estate, or to any relative of the Insured by blood or marriage.

The balance of the benefit, if any, will be held by us, until an individual or representative:

    (1) is validly named; or

    (2) is appointed to receive the proceeds; and

    (3) can give valid release to us.

We will not be liable for any payment we have made in good faith.

## CLAIMS PROVISIONS

**NOTICE OF CLAIM:** Written notice must be given to us within 31 days after the Loss occurs, or as soon as reasonably possible. The notice should be sent to us at our Administrative Offices or to our authorized agent. The notice should include the Insured's name and the Policy Number.

**CLAIM FORMS:** When we receive written notice of a claim, we will send claim forms to the claimant within 15 days. If we do not, the claimant will satisfy the requirements of written proof of loss by sending us written proof as shown below. The proof must describe the occurrence, extent and nature of the loss.

**PROOF OF LOSS:** For any covered Loss, written proof must be sent to us within 90 days. If it is not reasonably possible to give proof within 90 days, the claim is not affected if the proof is sent as soon as reasonably possible. In any event, proof must be given within 1 year, unless the claimant is legally incapable of doing so.

**TIME PAYMENT OF CLAIMS:** When we receive written proof of loss, we will pay any benefits due. Benefits that provide for periodic payment will be paid accordingly.

**PAYMENT OF CLAIMS:** If an Insured Person dies, we will pay any death benefit and any other accrued benefits in accordance with the Beneficiary and Facility of Payment provisions. All other benefits will be paid to the Insured Person.

Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

**PHYSICAL EXAMINATION AND AUTOPSY:** We have the right to have a doctor of our choice examine the Insured as often as we think necessary. This section applies while a claim is pending or while we are paying benefits. We also have the right to make an autopsy in case of death, unless the law forbids it. We will pay for the cost of both the examination and the autopsy.

**LEGAL ACTION:** No lawsuit or action in equity can be brought to recover on this Policy:

(1) before 60 days following the date written proof of loss was furnished to us; or
(2) after 3 years following the date written proof of loss is required (6 years in South Carolina and 5 years in Kansas).

## SETTLEMENT OPTIONS

The Insured Person may elect a single sum payment or a different way in which the beneficiary will receive payment of the Principal Sum. If other than a single sum payment is desired, he must provide a written request to us, for our approval, at our Administrative Office. If the option covers less than the full amount due, we must be advised of what part is to be under an option. Amounts under $2,000 or option payments of less than $20 each are not allowed.

If no instructions for a settlement option are in effect at the death of the Insured, the beneficiary may make the election, with our consent.

If a beneficiary dies while receiving payments under one of these options and there is no contingent beneficiary, the balance will be paid in one sum to the beneficiary's estate, unless otherwise agreed to in the instructions for settlement.

Requests for settlement options other than the 3 set out below may be made. A mutual agreement must be reached between the individual entitled to elect and us.

**OPTION A - FIXED TIME PAYMENT OPTION:** Equal monthly payments will be made for any period chosen, up to 30 years. The amount of each payment depends on the amount applied, the period selected and the payment rates we are using when the first payment is due. The rate of any monthly payment will not be less than shown in the table below. We reserve the right to change the minimum monthly payment. These changes will apply only to requests for settlement elected after the change.

### Option A Table
### Minimum Monthly Payment Rates for each $1,000 Applied

| Years | Monthly Payment | Years | Monthly Payment | Years | Monthly Payment | Years | Monthly Payment | Years | Monthly Payment |
|-------|-----------------|-------|-----------------|-------|-----------------|-------|-----------------|-------|-----------------|
| 1 | $84.47 | 7 | $13.16 | 13 | $7.71 | 19 | $5.73 | 25 | $4.71 |
| 2 | 42.86 | 8 | 11.68 | 14 | 7.26 | 20 | 5.51 | 26 | 4.59 |
| 3 | 28.99 | 9 | 10.53 | 15 | 6.87 | 21 | 5.32 | 27 | 4.47 |
| 4 | 22.06 | 10 | 9.61 | 16 | 6.53 | 22 | 5.15 | 28 | 4.37 |
| 5 | 17.91 | 11 | 8.86 | 17 | 6.23 | 23 | 4.99 | 29 | 4.27 |
| 6 | 15.14 | 12 | 8.24 | 18 | 5.96 | 24 | 4.84 | 30 | 4.18 |

**OPTION B - FIXED AMOUNT PAYMENT OPTION:** Each payment will be for an agreed fixed amount. The amount of each payment will not be less than $20 for each $2000 applied. Interest will be credited and added each month on the unpaid balance. This interest will be at a rate set by us, but not less than the equivalent of 3% per year. Payments continue until the amount we hold runs out. The last payment will be for the balance only.

**OPTION C - INTEREST PAYMENT OPTION:** We will hold any amount applied under this section. Interest on the unpaid balance will be paid each month at a rate set by us. This rate will not be less than the equivalent of 3% per year.

## ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT

### DESCRIPTION OF COVERAGE

**LOSS OF LIFE, LIMB, SIGHT, SPEECH OR HEARING:** If, due to Injury, an Insured suffers any one of the following specific Losses within 365 days from the date of the accident we will pay the Benefit Amount listed below. However, if more than one listed loss results from any one accident, we will only pay the one largest applicable benefit as listed below.

| <u>LOSS</u> | <u>BENEFIT AMOUNT:</u> |
|---|---|
| Loss of Life | the Insured's Principal Sum |
| Loss of Two or More Members | the Insured's Principal Sum |
| Loss of Speech and Hearing | the Insured's Principal Sum |
| Loss of One Member | 1/2 of the Insured's Principal Sum |
| Loss of Speech or Hearing | 1/2 of the Insured's Principal Sum |
| Loss of Thumb and | |
| Index Finger of the Same Hand | 1/4 of the Insured's Principal Sum |

**DEFINITIONS:**

"Member(s)" means: hand, foot or eye.

"Loss(es)" must result directly and independently from Injury, with no other contributing cause. As used in this benefit with respect to:

(1) a hand or foot, Loss means the complete severance through or above the wrist or ankle joints;

(2) an eye, Loss means the total and irrecoverable loss of sight;

(3) speech, Loss means the total and irrecoverable loss of the function;

(4) hearing, Loss means the total and irrecoverable loss of the hearing in both ears;

(5) a thumb and index finger, Loss means the complete severance through or above the metacarpophalangeal joint.

### COVERAGE FOR MEMBERS OF RESERVE-NATIONAL GUARD

**DESCRIPTION OF COVERAGE:** We will pay plan benefits for a loss due to Injury of any Insured which is sustained while such Insured is a member of an organized Reserve Corps or National Guard Unit and is:

(1) attending any regularly scheduled or routine training of less than 60 days, or is enroute to or from such training;

(2) attending a Service School no matter how long it is, or is enroute to or from that school;

(3) taking part in any authorized inactive duty training; or

(4) taking part as a unit member in a parade or exhibition authorized by official orders.

No benefit is payable for any loss that occurs during active duty.

**DEFINITION:**

"Service School" means one operated by or on behalf of the United States of America.

## COVERAGE OF EXPOSURE AND DISAPPEARANCE

### DESCRIPTION OF COVERAGE

**EXPOSURE:** Any loss that is due to exposure will be covered as if it were due to Injury, provided such loss results directly and independently of all other causes from accidental exposure to the elements which occurs while the Insured's coverage under this Policy is in force.

**DISAPPEARANCE:** We will presume an Insured suffered loss of life due to an Injury, if:

(1) while covered under this Policy, such Insured is riding in a conveyance that is involved in an accident, not excluded from coverage;

(2) the conveyance is wrecked, sinks or disappears as a result of such accident; and

(3) the Insured's body is not found within 1 year of the accident.

19

## SEAT BELT AND AIR BAG BENEFIT

**DESCRIPTION OF COVERAGE:** We will pay a sum equal to 10% of the Insured Person's Principal Sum if:

(1) the Insured Person dies as the result of a bodily Injury sustained while riding in or operating a Four-Wheel Vehicle;

(2) a police report establishes that the Insured Person was properly strapped in a Seat Belt at the time;

(3) Loss of Life benefits are payable for the Insured Person's death hereunder.

We will pay an additional 5% if the Insured Person is driving in or riding in a Four-Wheel Vehicle which is equipped with a factory-installed Supplemental Restraint System. The Insured Person must be positioned in a seat which is designed to be protected by an air bag and must be properly strapped in the Seat Belt when the air bag inflates. In addition to the above requirements, the police report must establish that the air bag inflated properly upon impact.

The total maximum benefit payable is $100,000.

No benefit will be paid for any loss sustained:

(1) while driving or riding in any Four-Wheel Vehicle used: in a race; in a speed or endurance test; or for acrobatic or stunt driving; or

(2) if the Insured Person is not wearing a Seat Belt for any reason; or

(3) while the Insured Person is sharing a Seat Belt; or

(4) due to a defect in the Supplemental Restraint System's diagnostic system.

If the police report does not clearly establish that the Insured Person was or was not wearing a seat belt at the time of the accident causing the Insured Person's death, we will pay a sum equal to $1,000.00 in lieu of the benefit described above.

## DEFINITIONS

"Seat Belt" means an unaltered Seat Belt or lap and shoulder restraint.

An air bag is not considered a Seat Belt.

"Supplemental Restraint System" means an air bag which inflates for added protection to the head and chest areas.

"Four-Wheel Vehicle" means a vehicle listed below provided it is: duly licensed for passenger use; and designated primarily for use on public streets and highways:

(1) a private passenger automobile; or

(2) a station wagon; or

(3) a van, jeep, or truck-type vehicle which has a manufacturer's rated load capacity of 2,000 pounds or less; or

(4) a self-propelled motor home.

## FAMILY AND MEDICAL LEAVE OF ABSENCE EXTENSION

We will allow the Insured Person's coverage to continue for up to twelve (12) weeks in a twelve (12) month period, if the Insured Person is eligible for, and you have approved, a Family and Medical Leave of Absence under the terms of the Family and Medical Leave Act of 1993 for any of the following reasons:

   (1)  To provide care after the birth of a son or daughter; or
   (2)  To provide care for a son or daughter upon legal adoption; or
   (3)  To provide care after the placement of a foster child in the Insured Person's home; or
   (4)  To provide care to a spouse, son, daughter, or parent due to serious illness; or
   (5)  To take care of his own serious health condition.

The Insured Person will not qualify for the Family and Medical Leave of Absence Extension unless we have received proof from you, in a form satisfactory to us, that the Insured Person has been granted a leave under the terms of the Family and Medical Leave Act of 1993. Such proof: (1) must outline the terms of the Insured Person's leave; and (2) give the date the leave is to begin; and (3) the date it is expected to end; and (4) must be received by us within thirty-one (31) days after a claim for benefits has been filed with us.

If you grant the Insured Person a Family and Medical Leave of Absence, the following applies to the Insured Person who has been granted the leave:

   (1)  While the Insured Person is on an approved Family and Medical Leave of Absence, the required premium must be paid according to the terms specified in this Policy to keep the insurance in force.

   (2)  Coverage will terminate for any Insured Person if the Insured Person does not return to work as scheduled according to the terms of his agreement with you; however, the Insured Person is eligible to convert his coverage under the Conversion Privilege. In no case will coverage be extended under this benefit beyond twelve (12) weeks in a twelve (12) month period. Insurance will not be terminated for an Insured Person who becomes Totally Disabled during the period of the leave and who is eligible for benefits according to the terms of this Policy.

   (3)  This extension is not available if the Insured Person converts his coverage under the Conversion Privilege.

   (4)  While the Insured Person is on an approved Family and Medical Leave of Absence, he will be considered Actively at Work in all instances unless such leave is due to his/her own illness, injury or disability. Changes such as revisions to coverage because of age, class or salary changes will apply during the leave except that increases in amount of insurance, whether automatic or subject to election, are not effective for an Insured who is not Actively at Work until such time as he/she returns to Active Work for one full day.

All other terms and conditions of this Policy will remain in force while an Insured Person is on an approved Family and Medical Leave of Absence.

## MILITARY SERVICES LEAVE OF ABSENCE COVERAGE

We will allow the Insured Person's coverage to continue for up to twelve (12) weeks in a twelve (12) month period, if the Insured Person enters the military service of the United States. While the Insured Person is on a Military Services Leave of Absence, the required premium must be paid according to the terms specified in this Policy to keep the insurance in force. Changes such as revisions to coverage because of age, class or salary changes will apply during the leave except that increases in amount of insurance, whether automatic or subject to election, are not effective for such an Insured until he/she has returned to work from a Military Services Leave of Absence for one full day. All other terms and conditions of this Policy will remain in force during the continuation period. The Insured Person's continued coverage will cease on the earliest of the following dates:

    (1)  the date this Policy terminates; or
    (2)  the end of the period for which premium has been paid for the Insured Person's coverage; or
    (3)  twelve (12) weeks from the date the Insured's continued coverage began.

This Policy, however, does not cover any loss which occurs on active duty in the military service if such loss is caused by or arises out of such military service, including but not limited to war or act of war (whether declared or undeclared) and is also subject to any other exclusions listed in the Exclusions provision.

## EXCLUSIONS

This Policy does not cover any loss:

    (1) to which sickness, disease, or myocardial infarction, including medical or surgical treatment thereof, is a contributing factor; or

    (2) caused by suicide, or intentionally self-inflicted injuries; or

    (3) caused by or resulting from war or any act of war, declared or undeclared; or

    (4) caused by an accident that occurs while in the armed forces of any country, except as shown under the Reserve-National Guard Benefit (any premium paid to us for any period not covered by this Policy while the Insured is in such service will be returned pro rata); or

    (5) caused by or resulting from riding in, getting into or out of any aircraft, unless:

        (a) the Insured Person is a passenger (not a pilot or crew member) in a tested and approved civilian aircraft being operated as passenger transport in compliance with the then current rules of the authority having jurisdiction over its operation; and
        (b) the aircraft is not owned, leased or operated by or on behalf of you, the Insured Person or any other employer of the Insured Person, unless a specific written agreement has been obtained from us; or

    (6) sustained during the Insured Person's commission or attempted commission of an assault or felony.

## CERTIFICATION OF VITAL RECORD

| OFFICE OF VITAL STATISTICS | CERTIFICATE OF DEATH | | | | |
|---|---|---|---|---|---|
| | State of Delaware | | (107) | | State File Number |
| | DEPARTMENT OF HEALTH AND SOCIAL SERVICES | | | | |

**1. DECEDENT'S LEGAL NAME** (Include AKA's if any) (First, Middle, Last)
ELIZABETH WARE

**2. SEX** FEMALE  **3. SOCIAL SECURITY NUMBER** ▮▮▮▮

**4a. AGE-Last Birthday (Years)** 31  **4b. UNDER 1 YEAR** Months Days  **4c. UNDER 1 DAY** Hours Minutes  **5. DATE OF BIRTH** (Mo/Day/Yr) ▮▮▮▮  **6. BIRTHPLACE** (City and State or Foreign Country) Tulsa, OK

**7a. RESIDENCE-STATE** Delaware  **7b. COUNTY** New Castle  **7c. CITY OR TOWN** Newark

**7d. STREET AND NUMBER** ▮▮▮▮  **7e. APT. NO.**  **7f. ZIP CODE** 19711  **7g. INSIDE CITY LIMITS?** ☐ Yes ☒ No

**8. EVER IN US ARMED FORCES?** ☐ Yes ☒ No  **9. MARITAL STATUS AT TIME OF DEATH** ☐ Married ☐ Widowed ☐ Divorced ☒ Never Married ☐ Unknown  **10. SURVIVING SPOUSE'S NAME** (If wife, give name prior to first marriage)

**11. FATHER'S NAME** (First, Middle, Last) ▮▮▮▮  **12. MOTHER'S NAME PRIOR TO FIRST MARRIAGE** (First, Middle, Last)

**13a. INFORMANT'S NAME** Teresa Gonzalez  **13b. RELATIONSHIP TO DECEDENT** Sister  **13c. MAILING ADDRESS** (Street and Number, City, State, Zip Code) 8156 S. Clarkson Court Centennial, CO 80122

### 14. PLACE OF DEATH (Check only one; see instructions)

**IF DEATH OCCURRED IN A HOSPITAL:** ☐ Inpatient ☐ Emergency Room/Outpatient ☐ Dead on Arrival
**IF DEATH OCCURRED SOMEWHERE OTHER THAN A HOSPITAL:** ☐ Hospice facility ☐ Nursing home/Long term care facility ☐ Decedent's home ☒ Other (Specify)

**15. FACILITY NAME** (If not institution, give street & number) RT. 273 E/B EAST OF MARROWS RD  **16. CITY OR TOWN, STATE, AND ZIP CODE** NEWARK, DE  **17. COUNTY OF DEATH** N.C.

**18. METHOD OF DISPOSITION** ☒ Burial ☐ Cremation ☐ Donation ☐ Entombment ☐ Removal from State ☐ Other (Specify)  **19. PLACE OF DISPOSITION** (Name of cemetery, crematory, other place) Glinger Chapel Hill Cemetery

**20. LOCATION-CITY, TOWN, AND STATE** Littleton, CO  **21. NAME AND COMPLETE ADDRESS OF FUNERAL FACILITY** Strano & Feeley Family Funeral Home 635 Churchmans Road, Newark, DE 19702

**22. SIGNATURE OF FUNERAL SERVICE LICENSEE OR OTHER AGENT** ▮▮▮▮  **23. LICENSE NUMBER** (Of Licensee) K10000444

**ITEMS 24-28 MUST BE COMPLETED BY PERSON WHO PRONOUNCES OR CERTIFIES DEATH**  **24. DATE PRONOUNCED DEAD** (Mo/Day/Yr) MAY 2, 2007  **25. TIME PRONOUNCED DEAD** 7:39 AM

**26. SIGNATURE OF PERSON PRONOUNCING DEATH** (Only when applicable)  **27. LICENSE NUMBER**  **28. DATE SIGNED** (Mo/Day/Yr)

**29. ACTUAL OR PRESUMED DATE OF DEATH** (Mo/Day/Yr) (Spell Month)  **30. ACTUAL OR PRESUMED TIME OF DEATH**  **31. WAS MEDICAL EXAMINER CONTACTED?**

### CAUSE OF DEATH (See instructions and examples)

**32. PART I.** Enter the chain of events—diseases, injuries, or complications—that directly caused the death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE. Enter only one cause on a line. Add additional lines if necessary.

**Approximate interval: Onset to death**

IMMEDIATE CAUSE (Final disease or condition resulting in death)  → a. MULTIPLE STAB WOUNDS
Due to (or as a consequence of):

Sequentially list conditions, if any, leading to the cause listed on line a. Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST  b. _____ Due to (or as a consequence of):
c. _____ Due to (or as a consequence of):
d. _____

**PART II.** Enter other significant conditions contributing to death but not resulting in the underlying cause given in PART I

**33. WAS AN AUTOPSY PERFORMED?** ☐ Yes ☐ No ☐ Unknown
**34. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH?** ☐ Yes ☐ No ☐ Unknown

**35. DID TOBACCO USE CONTRIBUTE TO DEATH?** ☐ Yes ☐ Probably ☐ No ☐ Unknown

**36. IF FEMALE:** ☐ Not pregnant within past year ☐ Pregnant at time of death ☐ Not pregnant, but pregnant within 42 days of death ☐ Not pregnant, but pregnant 43 days to 1 year before death ☐ Unknown if pregnant within last year

**37. MANNER OF DEATH** ☐ Natural ☒ Homicide ☐ Accident ☐ Pending Investigation ☐ Suicide ☐ Could not be determined

**38. DATE OF INJURY** (Mo/Day/Yr) (Spell Month) 5/2/2007  **39. TIME OF INJURY** FOUND 7:10 AM UNKNOWN  **40. PLACE OF INJURY** (e.g., Decedent's home, construction site, restaurant, wooded area) ROADWAY  **41. INJURY AT WORK?** ☒ Yes ☐ No

**42. LOCATION OF INJURY: State:** DELAWARE  **City or Town:** NEWARK
**Street & Number:** RT. 273 E/B EAST OF MARROWS RD.  **Apartment No.:**  **Zip Code:**

**43. DESCRIBE HOW INJURY OCCURRED:** WAS ASSAULTED.

**44. IF TRANSPORTATION INJURY, SPECIFY:** ☐ Driver/Operator ☐ Passenger ☐ Pedestrian ☐ Other (Specify)

**45. CERTIFIER** (Check only one):
☐ Certifying physician-To the best of my knowledge, death occurred due to the cause(s) and manner stated.
☐ Pronouncing & Certifying physician-To the best of my knowledge, death occurred at the time, date, and place, and due to the cause(s) and manner stated.
☒ Medical Examiner-On the basis of examination, and/or investigation, in my opinion, death occurred at the time, date, and place, and due to the cause(s) and manner stated.

**Signature of certifier:** ▮▮▮▮

**46. NAME, ADDRESS, AND ZIP CODE OF PERSON COMPLETING CAUSE OF DEATH**
JENNIE VERSHVOVSKY, M.D., 200 SOUTH ADAMS STREET, WILMINGTON, DE 19801

**47. TITLE OF CERTIFIER** ASSISTANT  **48. LICENSE NUMBER** C10007039  **49. DATE CERTIFIED** (Mo/Day/Yr) MAY 3, 2007  **50. FOR REGISTRAR ONLY - DATE FILED** (Mo/Day/Yr) MAY 0 8 2007

**51. DECEDENT'S EDUCATION**-Check the box that best describes the highest degree or level
**52. DECEDENT OF HISPANIC ORIGIN?** Check the box that best describes whether the decedent is
**53. DECEDENT'S RACE** (Check one or more races to indicate what the decedent considered himself or herself to be)

L596430

This is to certify that this is a true and correct reproduction or abstract of the official record filed with the Delaware Division of Public Health.

Any alteration of this document is prohibited. Do not accept unless on security paper with the raised seal of the Office of Vital Statistics.

State Registrar

*PSI*
*no date given*

# Superior Court of the State of Delaware, _____NC_____ County

## PLEA AGREEMENT



State of Delaware v. _Jermease Ross_

Case No(s): _0705002357_    Cr.A.#s: _IN0705 0818 and 0819_

☐ Title 11 HAB. OFFENDER _____    ☐ BOOT CAMP ELIGIBLE    ☐ INELIGIBLE

☐ RULE 11(e)(1)(C) — If out of guideline, reason is as follows: _____

☐ Title 11, §4336, sex offender notification required    ☐ Title 11, §9019(e), forensic fine ☐ $100(F), ☐ $50(M)

**Defendant will plead guilty to:**

| Count | Cr.A.# | Charge | [LIO if applicable] |
|-------|--------|--------|---------------------|
| I | 0818 | Murder First Degree | |

Upon the sentencing of the defendant, a **nolle prosequi** is entered on ☐ the following charges/☐ all remaining charges on this indictment:

| Count | Cr.A# | Charge |
|-------|-------|--------|
| II | 0819 | P.D.W.D.C.F. |

**Sentence Recommendation/Agreement:**    ☑ PSI    ☐ Immediate Sentencing

_State will not seek the death penalty_

**State and Defendant agree to the following:**

☑ Restitution: _____

☑ No _____ contact w/ _victims family_

☐ Other Conditions:

\* _Must be accepted 2/1/08_

DAG: _Kriner_

PRINT NAME

_James Kriner_

SIGNATURE

DEF. COUNSEL: _RM RADULSKI_

PRINT NAME

_RM Radulski_

SIGNATURE

Date: _2/1/08_    DEFENDANT: _____

CERTIFIED AS A TRUE COPY
ATTEST SHARON AGNEW
PROTHONOTARY
BY Shaun Lavallee

XC: Attorney for Defendant, Defendant
Attorney General, Attorney General Worksheet

Page ___ of ___

# TRUTH-IN-SENTENCING GUILTY PLEA FORM
## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
### IN AND FOR _____ COUNTY

**STATE OF DELAWARE**  )    ID: _O7O5OO2357_____

v. _JRRMRASR  ROSS_____  )

)    CRA: _____

### *The defendant must answer the following questions in his or her own handwriting.*

Date of Birth  _8 - 18 - 81_____    Last grade in school completed  _1 yr. college____

|  |  | Yes | No |
|---|---|---|---|
| Have you ever been a patient in a mental hospital? | (BW) | ☐ Yes | ☑ No |
| Are you under the influence of alcohol or drugs at this time? | | ☐ Yes | ☑ No |
| Have you freely and voluntarily decided to plead guilty to the charges listed in your written plea agreement? | | ☑ Yes | ☐ No |
| Have you been promised anything that is not stated in your written plea agreement? | | ☐ Yes | ☑ No |
| Has your attorney, the State, or anyone threatened or forced you to enter this plea? | | ☐ Yes | ☑ No |

Do you understand that because you are pleading guilty you will not have a trial, and you therefore waive (give up) your constitutional right:
(1) to be **presumed innocent** until the State can prove each and every part of the charge(s) against you beyond a reasonable doubt;
(2) to a **speedy and public trial**;
(3) to **trial by jury**;
(4) to **hear and question the witnesses** against you;
(5) to **present evidence** in your defense;
(6) to **testify** or not testify yourself; and,
(7) to **appeal** to a higher court?                    ☑ Yes ☐ No

| OFFENSE | STATUTORY PENALTY | | TIS GUIDELINE |
|---|---|---|---|
|  | Incarceration | Amount of Fine (range if applicable) |  |
| MURDRR 1St. DRgLRR | LIFE |  | LIFR |
|  |  |  |  |
|  |  |  |  |

**TOTAL CONSECUTIVE MAXIMUM PENALTY:**  Incarceration: _LIFR_____  Fine: _____

*NON-CITIZENS: Conviction of a criminal offense may result in deportation, exclusion from the United States, or denial of naturalization.*

Do you understand that, if incarcerated, you will not be eligible for parole, and the amount of early
    release credits which you may earn will be limited to a maximum of ninety (90) days per year?    ☑ Yes ☐ No
Is there a **minimum mandatory penalty?**    ☑ Yes ☐ No
If so, what is it?_____ LIFR _____
Is there a **mandatory revocation of driver's license or privileges** for this offense or as a result of your plea?    ☐ Yes ☑ No
If so, what is the **length of revocation** _____ years
Has anyone promised you what your sentence will be?    ☑ Yes ☐ No
Were you on **probation or parole** at the time of this offense? (A guilty plea may constitute a violation.)    ☐ Yes ☑ No
Do you understand that a guilty plea to a felony will cause you to **lose your right to vote, to be**
    **a juror, to hold public office**, and other **civil rights?**    ☑ Yes ☐ No
Have you been advised that this is an offense which results in the loss of the **right to own or possess**
    **a deadly weapon?**    ☑ Yes ☐ No
Have you been advised that this is an offense which requires **registration as a sex offender?**    ☐ Yes ☑ No
Are you satisfied with your lawyer's representation of you and that your lawyer has **fully advised you**
    **of your rights** and of your guilty plea?    ☑ Yes ☐ No
**Have you read and understood all the information contained in this form?**    ☑ Yes ☐ No

_Rev Radndul_____  _2-1-08____    _(signature)_____
Defense Counsel    Date    Defendant

Print name: _Jermcas-e Ross_____    Print name: _____

# RELIANCE STANDARD
Life Insurance Company

**Proof of Loss Claim Statement**
**Group Life/Accidental Death Insurance**

## EMPLOYER/ADMINISTRATOR INSTRUCTIONS

The Employer/Administrator must complete PART A in its entirety. The Beneficiary must complete The Authorization for Use in Obtaining Information and PARTS B and C.

Return this form to:    Reliance Standard Life Insurance Company
Attn: Group Life Claims
P.O. Box 7307
Philadelphia, PA 19101-7307
Phone 1-800-351-7500

In addition to the claim form, the following items are required:
1. Certified Death Certificate (with raised or colored seal) providing the final cause of death.
2. Original enrollment forms and any subsequent changes, including all beneficiary designations.
3. Payroll records for two (2) months prior to the date last worked confirming premium deduction (if the employee was required to pay any portion of the premiums for this insurance).
4. Additional documents are required if the beneficiary is a Minor or an Estate-See next page for additional information.
5. If Accidental Death Benefits are being claimed, provide any police report, autopsy report and/or relevant newspaper clippings.

Any benefit payments of $5,000 or more will be deposited into an RSL Asset Account®. RSL will establish an interest       ng account for each Beneficiary and provide him/her with personalized checks and access to the account.

A separate form must be completed and signed by each Beneficiary. In certain instances, we may require completion of the Attending Physician's Statement (Part D). Also, on a small number of cases, additional information may be required. Submission of the above information does not waive our right to request additional information, or waive any of our rights or defenses, or admit liability.

## PART A: EMPLOYER/ADMINISTRATOR INFORMATION

| Employer Name and Address | Policy Number (MD+D) |
|---|---|
| Christina School District (600 N) Kennard St., Wilmington, DE 19801 | GL 140463 (UR)/AR 303555 |

| Division Name and Address | Employee Social Security Number |
|---|---|
| | |

| Employee Name and Address | Date Employment Commenced |
|---|---|
| ELIZABETH WARE ██████████ | 2/5/2000 |

Other Names by which the Employee may have been known (maiden name, hypothetical name, nickname, derivative form of first/middle name, alias)
N/A

| Was Insurance in Effect on Date of Loss? ☒Yes ☐No | If No, Termination Date of Coverage | Date of Birth ████ | Date of Death 5/2/2007 | Employee Occupation/Title/Position School Bus Driver |
|---|---|---|---|---|
| Effective Date of Coverage for Employee 7/1/2000 | Insurance Class (Refer to Policy Schedule of Policy) | Salary on Last Benefit Change Date $ 22,880 ☐Hrly ☐Wkly ☐Mthly ☒Annly | | Date Premium Paid To On Employee's Behalf 5/31/2007 |
| Life Benefit In Force $42,000 | Are Accidental Death Benefits Being Claimed? ☒Yes ☐No Amount Claimed $ 42,000 | Date of Last Salary Increase 1/8/2007 | | Date of Last Benefit Increase 1/8/2007 |

Status of Employee on Date
☒Active ☐Retired ☐Premium Waiver for Disability ☐Approved Leave of Absence (Explain)    ☐Other (Explain)

| Usual Number of Hours Employee Worked Per Week 40 | Date Employee Last Worked Usual Number of Hours 5/1/2007 | Reason Employee Did Not Return to Work ASSAULTED morning of 5/2/2007 |
|---|---|---|
| Employee Was: (Check All That Apply) | ☒Full-time ☐Union ☐Hourly ☐Exempt ☐Commissioned | |
| | ☐Part-time ☒Non-Union ☒Salaried ☒Non-Exempt ☐Other (Explain) | |

If Claim Is For Dependent, Provide the Following:

| Dependent's Name and Address | Social Security Number | Relationship | Amount of Benefit |
|---|---|---|---|
| | | | |

Other Names by which the Dependent may have been known (maiden name, hypothetical name, nickname, derivative form of first/middle name, alias)

## EMPLOYER/ADMINISTRATOR SIGNATURE

Any person who knowingly and with intent to injure, defraud or deceive Reliance Standard Life Insurance Company, files a statement of claim or submits any information in conjunctions with a claim containing fraudulent, false, misleading, incomplete or deceptive information commits a fraudulent insurance act, which is a crime. These actions will result in the denial of the claim, and are subject to prosecution under state and/or federal law. Reliance Standard Life Insurance Company will cooperate fully with any prosecution and will seek any and all appropriate legal remedies

| Phone Number (302) 552-2615 | Fax Number (302) 552-2699 | Email Address wideman@christina.k12.de.us |
|---|---|---|
| Employer/Administrator Name (Please Print) (Ms) Dale Wideman | Employer/Administrator Signature Dale Wideman | Date 6-1-07 |

**6**

## DESIGNATION OR CHANGE OF BENEFICIARY FORM
### Local Life Insurance

*Elizabeth Ware*                *school bus driver*

_Name of Employee_                    _Occupation_                    _Social Security Number_

☐  Male
☑  Female

_Date of Birth_                    _Date of Employment_

Primary Beneficiary (ies):

| Name: *Jermease Ross* | Name: |
|---|---|
| Address: | Address: |
| Relationship: *fiancé* | Relationship: *son* |
| Date of Birth: | Date of Birth: |
| Social Security Number: | Social Security Number: |

List contingent beneficiaries below.

Benefits are payable in equal shares to the primary beneficiary (ies) shown, if living, or to the survivors, otherwise to the named contingent beneficiary (ies) in equal shares or to the survivors unless otherwise specified.

_Employee Signature_                    *5/16/06*  _Date_

The right is reserved to revoke this designation and to designate new beneficiaries at any time by filing a new designation or Change of Beneficiary Form.

This request and authorization applies to any such plan of insurance as presently constituted or hereinafter changed for which I am or may become eligible and shall continue to apply until rescinded by me in writing.

*EW*  *Primary*

Contingent Beneficiary (ies):

| Name: | Name: |
|---|---|
| Address: | Address: |
| Relationship: *son* | Relationship: *daughter* |
| Date of Birth: | Date of Birth: |
| Social Security Number: | Social Security Number: |

| Name: | Name: |
|---|---|
| Address: | Address: |
| Relationship: | Relationship: |
| Date of Birth: | Date of Birth: |
| Social Security Number: | Social Security Number: |

**CHRISTINA**
SCHOOL DISTRICT

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

IN THE MATTER OF:                    )
          ████████,                  )     C.M. No.  *13056 - N*
     ████████ AND                    )
     ████████                        )
                                     )

## ORDER APPOINTING GUARDIAN

THE COURT HAVING MATURELY CONSIDERED the Petition of Teresa Gonzalez for

the appointment of a guardian of the property of ████████, ████████ and ████████,

minors,

IT IS ORDERED that Teresa Gonzalez be and hereby is appointed guardian of the property

of ████████, ████████ and ████████, first giving bond to the State of Delaware in the

penal sum of $ *42,000.00* without surety.

FURTHER ORDERED that said guardian, after qualifying as provided in this Order, be and

hereby is authorized as follows:

(1)    To collect any and all income and other property legally receivable by

████████, ████████ and ████████.

(2)    To execute and deliver valid receipts and complete discharges to the

custodians of such accounts or issuers of such policies, to institute any suit or proceedings, and to

take any other action that may be necessary for the purpose of collecting such amounts.

(3)    To manage all assets of each ward's estate in the manner and with the care,

skill, prudence and diligence required by and in the kinds of investments authorized in 12 Del. C.

§3302; and to hold and manage the assets of each ward's estate in an account at Wilmington Trust

Company, each respectively denoted as:

- Guardianship Account for ███████████, ███esa Gonzalez, Guardian, withdrawals only by order of the Court of Chancery

- Guardianship Account for ██████████, Theresa Gonzalez, Guardian, withdrawals only by order of the Court of Chancery, and

- Guardianship Account for ██████████ Theresa Gonzalez, Guardian, withdrawals only by order of the Court of Chancery.

(4)    To prepare and execute each of ██████████████████ and ████ ███████ tax returns, to make any payments and collect any refunds due thereunder; to sue on their respective behalves; and generally to represent their respective interests in all respects.

FURTHER ORDERED that said guardian shall, as required by the Rules of this Court and at such other times as the Court shall direct, make to this Court a true account of all the property and income therefrom that shall come into her custody or possession, and otherwise comply with the Rules of this Court.

IT IS SO ORDERED this __5th__ day of ___June___, 2007.

_(Master)_

CERTIFIED
AS A TRUE COPY:
ATTEST:

REGISTER IN CHANCERY
By ___JF Butler___

## PART B: IMPORTANT TAX INFORMATION

**To Be Completed By Beneficiary**
Under penalties of perjury, I certify (1) that the Social Security Number shown on this form is my correct Social Security Number or Taxpayer Identification Number and (2) that I am not subject to backup withholding as a result of a failure to report all interest or dividends; or the Internal Revenue Service has notified me that I am no longer subject to backup withholding. (Strike out clause (2) if you are currently under notification that you are subject to backup withholding.)

By signing this form the beneficiary has read and agrees with the terms of the statement as well as any accompanying information.

Social Security Number/Tax ID Number

~~[redacted]~~

Signature of the Beneficiary:

*Jermease Ross*

If applicable, this signature specimen will be used on the RSL Asset Account®

Date Signed (month, day, year): *8-15-07*

## PART C: BENEFICIARY INFORMATION

In order to assure prompt processing, please be sure to provide the **IMPORTANT TAX INFORMATION** above. Be certain the Authorization for Use in Obtaining Information is signed by the next of kin or authorized representative of the deceased. The completed and signed claim form along with the Certified Death Certificate and other required items should be returned to the Employer/Administrator for submission. If you are interested in an optional Method of Settlement rather than a lump sum payment, please contact us at the address or telephone number on this form for the plans that are available. Important: Upon approval of this claim, if the benefit amount is $5,000 or more, we will deposit the benefit into an interest bearing account in your name and provide you with access to it.

| Name of Beneficiary (Please Print) | Relationship of Beneficiary To Employee | Beneficiary's Date of Birth | Address of Beneficiary (No., Street, City, State) (Please provide your email address, if available) |
|---|---|---|---|
| *Jermease Ross* | *fiance* | ~~[redacted]~~ | *1 Deville Circle Apt#6 Wilm. De. 19808* |

Email address: *N/A*

Note: If any designated beneficiary is deceased, submit that beneficiary's certificate of death. If beneficiary is the deceased's Estate, provide certified Letters of Administration or Letters Testamentary along with the Estate's Tax ID Number. If beneficiary is a minor, provide certified Letters of Guardianship for the minor's Estate and the minor's social security number. The Guardian should sign Part B (IMPORTANT TAX INFORMATION) above, and should also sign where indicated below in his/her capacity on behalf of the Estate of the Minor.

List Other Insurance Coverage In Force At the Time of the Insured's Death

| Companies | Policy Number | Effective Date | Amount of Insurance |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

Any person who knowingly and with intent to injure, defraud or deceive Reliance Standard Life Insurance Company, files a statement of claim or submits any information in conjunction with a claim containing fraudulent, false, misleading, incomplete or deceptive information commits a fraudulent insurance act, which is a crime. These actions will result in the denial of the claim, and are subject to prosecution under state and/or federal law. Reliance Standard Life Insurance Company will cooperate fully with any prosecution and will seek any and all appropriate legal remedies.

| Signature of Beneficiary | Business Phone No. ( ) | Home Phone No. ( ) | Date |
|---|---|---|---|

## PART D: ATTENDING PHYSICIAN'S STATEMENT

Completion of PART D may help to expedite the processing and review of this claim. May not be necessary if Employee was on Approved Waiver.

| Name of Deceased | Names(s)/Address(es) of all Physicians Who Treated Deceased |
|---|---|

**Cause of Death**

| Principal Cause | | Date of Onset |
|---|---|---|

| Contributing Cause | | Date of Onset |
|---|---|---|

| I Attended Deceased | From (Date) _____ To (Date) _____ | If Decedent Was Hospitalized, Provide the Name of Hospital and Admission and Discharge Dates Name of Hospital: Admit (Date) _____ Discharge (Date) _____ |
|---|---|---|

Was deceased unable to work due to illness or injury prior to date of death?
☐ Yes ☐ No

If "Yes" please state date on which such illness or injury prevented the deceased from working: _____

Was Death Due To: ☐ Accident? ☐ Suicide? ☐ Homicide?

If caused by accident, was it associated with his/her occupation? ☐ Yes ☐ No

Name of Physician (Please Print)

Address of Physician

Any person who knowingly and with intent to injure, defraud or deceive Reliance Standard Life Insurance Company, files a statement of claim or submits any information in conjunction with a claim containing fraudulent, false, misleading, incomplete or deceptive information commits a fraudulent insurance act, which is a crime. These actions will result in the denial of the claim, and are subject to prosecution under state and/or federal law. Reliance Standard Life Insurance Company will cooperate fully with any prosecution and will seek any and all appropriate legal remedies.

| Date | Phone Number ( ) | Fax Number ( ) | Physician's Signature | Degree |
|---|---|---|---|---|

EF-1036

## PART B: IMPORTANT TAX INFORMATION

**To Be Completed By Beneficiary**
Under penalties of perjury, I certify (1) that the Social Security Number shown on this form is my correct Social Security Number or Taxpayer Identification Number and (2) that I am not subject to backup withholding as a result of a failure to report all interest or dividends; or the Internal Revenue Service has notified me that I am no longer subject to backup withholding. (Strike out clause (2) if you are currently under notification that you are subject to backup withholding.)

By signing this form the beneficiary has read and agrees with the terms of the statement as well as any accompanying information.

Social Security Number/Tax ID Number

Signature of the Beneficiary:

_on Behalf of_

If applicable, this signature specimen will be used on the RSL Asset Account ®

Date Signed (month, day, year): 1/11/07

## PART C: BENEFICIARY INFORMATION

In order to assure prompt processing, please be sure to provide the IMPORTANT TAX INFORMATION above. Be certain the Authorization for Use in Obtaining Information is signed by the next of kin or authorized representative of the deceased. The completed and signed claim form along with the Certified Death Certificate and other required items should be returned to the Employer/Administrator for submission. If you are interested in an optional Method of Settlement rather than a lump sum payment, please contact us at the address or telephone number on this form for the plans that are available. Important: Upon approval of this claim, if the benefit amount is $5,000 or more, we will deposit the benefit into an interest bearing account in your name and provide you with access to it.

| Name of Beneficiary | Relationship To Employee | Beneficiary's Date of Birth | Address of Beneficiary (No., Street, City, State) |
|---|---|---|---|
| | Son | | |

Note: If any designated beneficiary is deceased, submit that beneficiary's certificate of death. If beneficiary is the deceased's Estate, provide certified Letters of Administration or Letters Testamentary along with the Estate's Tax ID Number. If beneficiary is a minor, provide certified Letters of Guardianship for the minor's Estate and the minor's social security number. The Guardian should sign Part B (IMPORTANT TAX INFORMATION) above, and should also sign where indicated below in his/her capacity on behalf of the Estate of the Minor.

**List Other Insurance Coverage In Force At the Time of the Insured's Death**

| Companies | Policy Number | Effective Date | Amount of Insurance |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

Any person who knowingly and with intent to injure, defraud or deceive Reliance Standard Life Insurance Company, files a statement of claim or submits any information in conjunction with a claim containing fraudulent, false, misleading, incomplete or deceptive information commits a fraudulent insurance act, which is a crime. These actions will result in the denial of the claim, and are subject to prosecution under state and/or federal law. Reliance Standard Life Insurance Company will cooperate fully with any prosecution and will seek any and all appropriate legal remedies.

| Signature of Beneficiary _on behalf of Fareeta_ | Business Phone No. (303) 785-3450 | Home Phone No. | Date 7/11/07 |
|---|---|---|---|

## PART D: ATTENDING PHYSICIAN'S STATEMENT

Completion of PART D may help to expedite the processing and review of this claim.

| Name of Deceased | Names(s)/Address(es) of all Physicians Who Treated Deceased |
|---|---|

**Cause of Death**

| Principal Cause | | Date of Onset |
|---|---|---|
| Contributing Cause | | Date of Onset |

| I Attended Deceased | From (Date) | To (Date) |
|---|---|---|

Was deceased unable to work due to illness or injury prior to date of death? ☐ Yes  No ☐ | If "Yes" please state date on which such illness or injury prevented the deceased from working:

Was Death Due To:  Accident? ☐   Suicide? ☐   Homicide? ☐ | If caused by accident, was it associated with his/her occupation?  Yes ☐  No ☐

| Name of Physician (Please Print) | Address of Physician |
|---|---|

Any person who knowingly and with intent to injure, defraud or deceive Reliance Standard Life Insurance Company, files a statement of claim or submits any information in conjunction with a claim containing fraudulent, false, misleading, incomplete or deceptive information commits a fraudulent insurance act, which is a crime. These actions will result in the denial of the claim, and are subject to prosecution under state and/or federal law. Reliance Standard Life Insurance Company will cooperate fully with any prosecution and will seek any and all appropriate legal remedies.

| Date | Phone Number ( ) | Fax Number ( ) | Physician's Signature | Degree |
|---|---|---|---|---|

EF-1036

# 2007-162-064 + # 2007-162-067

## PART B: IMPORTANT TAX INFORMATION

**To Be Completed By Beneficary**
Under penalties of perjury, I certify (1) that the Social Security Number shown on this form is my correct Social Security Number or Taxpayer Identification Number and (2) that I am not subject to backup withholding as a result of a failure to report all interest or dividends; or the Internal Revenue Service has notified me that I am no longer subject to backup withholding. (Strike out clause (2) if you are currently under notification that you are subject to backup withholding.)

By signing this form the beneficiary has read and agrees with the terms of the statement as well as any accompanying information.

Social Security Number/Tax ID Number

Signature of the Beneficiary:

If applicable, this signature specimen will be used on the RSL Asset Account ®

Date Signed (month, day, year): 7/11/07

## PART C: BENEFICIARY INFORMATION

In order to assure prompt processing, please be sure to provide the IMPORTANT TAX INFORMATION above. Be certain the Authorization for Use in Obtaining Information is signed by the next of kin or authorized representative of the deceased. The completed and signed claim form along with the Certified Death Certificate and other required items should be returned to the Employer/Administrator for submission. If you are interested in an optional Method of Settlement rather than a lump sum payment, please contact us at the address or telephone number on this form for the plans that are available. Important: Upon approval of this claim, if the benefit amount is $5,000 or more, we will deposit the benefit into an interest bearing account in your name and provide you with access to it.

| Name of Beneficiary | Relationship To Employee | Beneficiary's Date of Birth | Address of Beneficiary (No., Street, City, State) |
|---|---|---|---|
| | Son | | |

Note: If any designated beneficiary is deceased, submit that beneficiary's certificate of death. If beneficiary is the deceased's Estate, provide certified Letters of Administration or Letters Testamentary along with the Estate's Tax ID Number. If beneficiary is a minor, provide certified Letters of Guardianship for the minor's Estate and the minor's social security number. The Guardian should sign Part B (IMPORTANT TAX INFORMATION) above, and should also sign where indicated below in his/her capacity on behalf of the Estate of the Minor.

**List Other Insurance Coverage In Force At the Time of the Insured's Death**

| Companies | Policy Number | Effective Date | Amount of Insurance |
|---|---|---|---|
| | | | |
| | | | |

Any person who knowingly and with intent to injure, defraud or deceive Reliance Standard Life Insurance Company, files a statement of claim or submits any information in conjunction with a claim containing fraudulent, false, misleading, incomplete or deceptive information commits a fraudulent insurance act, which is a crime. These actions will result in the denial of the claim, and are subject to prosecution under state and/or federal law. Reliance Standard Life Insurance Company will cooperate fully with any prosecution and will seek any and all appropriate legal remedies.

| Signature of Beneficiary | Business Phone No. (303) 789-2450 | Home Phone No. | Date 7/11/07 |
|---|---|---|---|

## PART D: ATTENDING PHYSICIAN'S STATEMENT

Completion of PART D may help to expedite the processing and review of this claim.

| Name of Deceased | Names(s)/Address(es) of all Physicians Who Treated Deceased |
|---|---|
| | |

**Cause of Death**

| Principal Cause | | Date of Onset | |
|---|---|---|---|
| Contributing Cause | | Date of Onset | |
| I Attended Deceased | From (Date) | To (Date) | |

Was deceased unable to work due to illness or injury prior to date of death?
☐ Yes ☐ No

If "Yes" please state date on which such illness or injury prevented the deceased from working:

Was Death Due To: Accident? ☐   Suicide? ☐   Homicide? ☐   If caused by accident, was it associated with his/her occupation?   Yes ☐ No ☐

| Name of Physician (Please Print) | Address of Physician |
|---|---|
| | |

Any person who knowingly and with intent to injure, defraud or deceive Reliance Standard Life Insurance Company, files a statement of claim or submits any information in conjunction with a claim containing fraudulent, false, misleading, incomplete or deceptive information commits a fraudulent insurance act, which is a crime. These actions will result in the denial of the claim, and are subject to prosecution under state and/or federal law. Reliance Standard Life Insurance Company will cooperate fully with any prosecution and will seek any and all appropriate legal remedies.

| Date | Phone Number ( ) | Fax Number ( ) | Physician's Signature | Degree |
|---|---|---|---|---|

EF-1036

#2007-162-064 + #2007-162-067

## PART B:  IMPORTANT TAX INFORMATION

**To Be Completed By Beneficiary**

Under penalties of perjury, I certify (1) that the Social Security Number shown on this form is my correct Social Security Number or Taxpayer Identification Number and (2) that I am not subject to backup withholding as a result of a failure to report all interest or dividends; or the Internal Revenue Service has notified me that I am no longer subject to backup withholding. (Strike out clause (2) if you are currently under notification that you are subject to backup withholding.)

By signing this form the beneficiary has read and agrees with the terms of the statement as well as any accompanying information.

**Social Security Number/Tax ID Number**

**Signature of the Beneficiary:**

on Behalf of

If applicable, the signature specimen will be used on the RSL Asset Account ®

**Date Signed (month, day, year):**  7/11/07

## PART C:  BENEFICIARY INFORMATION

In order to assure prompt processing, please be sure to provide the **IMPORTANT TAX INFORMATION** above. Be certain the Authorization for Use in Obtaining Information is signed by the next of kin or authorized representative of the deceased. The completed and signed claim form along with the Certified Death Certificate and other required items should be returned to the Employer/Administrator for submission. If you are interested in an optional Method of Settlement rather than a lump sum payment, please contact us at the address or telephone number on this form for the plans that are available. Important: Upon approval of this claim, if the benefit amount is $5,000 or more, we will deposit the benefit into an interest bearing account in your name and provide you with access to it.

| Name of Beneficiary | Relationship To Employee | Beneficiary's Date of Birth | Address of Beneficiary (No., Street, City, State) |
|---|---|---|---|
|  | Daughter |  |  |

Note:  If any designated beneficiary is deceased, submit that beneficiary's certificate of death. If beneficiary is the deceased's Estate, provide certified Letters of Administration or Letters Testamentary along with the Estate's Tax ID Number. If beneficiary is a minor, provide certified Letters of Guardianship for the minor's Estate and the minor's social security number.  The Guardian should sign Part B (IMPORTANT TAX INFORMATION) above, and should also sign where indicated below in his/her capacity on behalf of the Estate of the Minor.

**List Other Insurance Coverage In Force At the Time of the Insured's Death**

| Companies | Policy Number | Effective Date | Amount of Insurance |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Any person who knowingly and with intent to injure, defraud or deceive Reliance Standard Life Insurance Company, files a statement of claim or submits any information in conjunction with a claim containing fraudulent, false, misleading, incomplete or deceptive information commits a fraudulent insurance act, which is a crime. These actions will result in the denial of the claim, and are subject to prosecution under state and/or federal law. Reliance Standard  Life Insurance Company will cooperate fully with any prosecution and will seek any and all appropriate legal remedies.

| Signature of Beneficiary | Business Phone No. | Home Phone No. | Date |
|---|---|---|---|
| on Behalf of Zenaidos | (303) 755-2450 |  | 7/11/07 |

## PART D:  ATTENDING PHYSICIAN'S STATEMENT

Completion of PART D may help to expedite the processing and review of this claim.

| Name of Deceased | Names(s)/Address(es) of all Physicians Who Treated Deceased |
|---|---|
|  |  |

**Cause of Death**

| Principal Cause |  | Date of Onset |
|---|---|---|
| Contributing Cause |  | Date of Onset |
| I Attended Deceased | From (Date) | To (Date) |

Was deceased unable to work due to illness or injury prior to date of death?
☐ Yes  No ☐

If "Yes" please state date on which such illness or injury prevented the deceased from working:

Was Death Due To:  Accident? ☐     Suicide? ☐     Homicide? ☐     If caused by accident, was it associated with his/her occupation?     Yes ☐  No ☐

| Name of Physician (Please Print) | Address of Physician |
|---|---|
|  |  |

Any person who knowingly and with intent to injure, defraud or deceive Reliance Standard Life Insurance Company, files a statement of claim or submits any information in conjunction with a claim containing fraudulent, false, misleading, incomplete or deceptive information commits a fraudulent insurance act, which is a crime. These actions will result in the denial of the claim, and are subject to prosecution under state and/or federal law. Reliance Standard  Life Insurance Company will cooperate fully with any prosecution and will seek any and all appropriate legal remedies.

| Date | Phone Number (    ) | Fax Number (    ) | Physician's Signature | Degree |
|---|---|---|---|---|
|  |  |  |  |  |

EF-1036

#2007- 162- 064  &   # 2007- 162- 067

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RELIANCE STANDARD LIFE INSURANCE COMPANY, | ) ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-655 |
| | ) | |
| JERMEASE ROSS and TERESA GONZALEZ, as Guardian of the Property of Elizabeth Ware's Minor Children | ) ) ) ) | |
| | ) | |
| Defendants | ) | |

**ORDER GRANTING SUMMARY JUDGMENT**

AND NOW, TO WIT, it appearing that Defendant Teresa Gonzalez, on behalf of and as guardian of the minor Children of Elizabeth Ware, has moved this Court for an order granting summary judgment in favor of the Children, and the Court having duly considered the matter, IT IS HEREBY ORDERED that:

1.      The Motion for Summary Judgment of Defendant Teresa Gonzalez is hereby GRANTED;

2.      Judgment is hereby entered in favor of Defendant Teresa Gonzalez and against Defendant Jermease Ross with respect to all counts of the Plaintiff's Interpleader Complaint; and

3.      The Disputed Benefits, totaling $21,000, plus interest, are to be paid to Defendant Teresa Gonzalez as guardian of the property of the minor Children of Elizabeth Ware within _____ days of the entry of this Order.

IT IS SO ORDERED this _____ day of _____, 2008.

_____
U.S. District Court Judge Sue L. Robinson